1   David T. Biderman, Bar No. 101577
    DBiderman@perkinscoie.com
2   Judith B. Gitterman, Bar No. 115661
    JGitterman@perkinscoie.com
3   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
4   Los Angeles, CA  90067-1721
    Telephone:  310.788.9900
5   Facsimile:  310.788.3399

6   Floyd Abrams
    fabrams@cahill.com
7   Brian T. Markley
    bmarkley@cahill.com
8   CAHILL GORDON & REINDEL LLP
    80 Pine Street
9   New York, NY  10005
    Telephone:  212.701.3000
10  Facsimile:  212.269.5420
    (Admitted Pro Hac Vice)

11  Attorneys for Standard & Poor's Financial Services
12  LLC, incorrectly sued as Standard & Poor's

13  *- Additional Counsel Listed on Signature Page -*

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                  SOUTHERN DIVISION

17

| | |
|---|---|
| 18   PAUL RICE and JOSEPH RICE, | Case No.  SACV 10-00398 CJC (MLGx) |
| 19              Plaintiffs, | **DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| 20        v. | |
| 21   CHARLES SCHWAB; MOODY'S INVESTORS SERVICE; | |
| 22   STANDARD & POOR's, DOES 1 through 50, Inclusive, | |
| 23 | |
| 24              Defendants. | Date:      August 9, 2010 |
| 25 | Time:      1:30 p.m. |
| | Place:     Courtroom 9(B) |
| 26 | Hon. Cormac J. Carney |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................1

II.  ARGUMENT ........................................................................................3

A.   THE CRAS DID NOT OWE PLAINTIFFS A DUTY OF CARE UNDER EITHER NEW YORK OR CALIFORNIA LAW ................3

B.   PLAINTIFFS FAIL TO ALLEGE ANY OF THE OTHER ELEMENTS REQUIRED TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION OR FRAUD ......................6

C.   THE CREDIT RATING AGENCY REFORM ACT OF 2006 PREEMPTS PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ...... 10

D.   PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ARE ALSO BARRED BY FUNDAMENTAL CONSTITUTIONAL PRINCIPLES ........................................................................ 12

E.   LEAVE TO AMEND THE FIRST AMENDED COMPLAINT SHOULD BE DENIED BECAUSE SUCH LEAVE WOULD BE FUTILE ...................................................................... 15

III. CONCLUSION .................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155
(S.D.N.Y. 2009)........................................................................... 12-13

*Barger* v. *Playboy Enterprises, Inc.*, 564 F. Supp. 1151 (N.D. Cal. 1983)............. 15

*Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992) ................................................. 3, 4

*Burstyn* v. *Joseph Wilson, Inc.*, 343 U.S. 495, 72 S. Ct. 777, 96 L.Ed. 1098
(1952)........................................................................................ 14

*California Public Employees' Retirement System* v. *Moody's Corp. et al.* No.
09-490241 (Cal. Super. Ct. Apr. 30, 2010) ......................................... 10

*Clemens* v. *DaimlerChrysler Corp.*, 2006 WL 6022681 (C.D. Cal. 2006).............. 9

*Cohen* v. *S&S Construction Co.*, 151 Cal. App. 3d 941 (4th Dist. 1983) ............. 4, 7

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th
Cir. 2007)............................................................................... 6-7, 12

*Comwest, Inc.* v. *American Operator Services, Inc.*, 765 F. Supp. 1467 (C.D.
Cal. 1991) ..................................................................................... 9

*County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151 (C.D. Cal. 1999)  . . . . . . . 12

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp.
2d 742 (S.D. Tex 2005) ........................................................... 4, 12, 15

*Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188
(1938)........................................................................................ 3

*Gagne* v. *Bertran*, 43 Cal. 2d 481 (1954) .............................................. 4, 7

*Gentry* v. *eBay, Inc.*, 99 Cal. App. 4th 816 (4th Dist. 2002) ......................... 6

*Ginsburg* v. *Agora, Inc.*, 915 F. Supp. 733 (D. Md. 1995).......................... 5

*Gutter* v. *Dow Jones, Inc.*, 22 Ohio St. 3d 286, 490 N.E.2d 898 (Ohio 1986).......... 5

*In re IndyMac Mortgage Backed Securities Litigation*, 2010 WL 2473243
(S.D.N.Y. June 21, 2010) ............................................................... 6

*Jefferson County School District No. R-1* v. *Moody's Investor's Services,
Inc.*, 175 F.3d 848 (10th Cir. 1999)................................................. 12

*Lee* v. *City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ........................... 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Lehman Bros. Securities and ERISA Litigation*, 684 F. Supp. 2d 485
(S.D.N.Y. 2010)..................................................................................... 6, 8

4

*Lowe* v. *SEC*, 472 U.S. 181, 105 S. Ct. 2557, 86 L.Ed.2d 130 (1985).................. 14

5

*In re National Century Financial Enterprises, Inc., Investment Litigation*,
580 F. Supp. 2d 630 (S.D. Ohio 2008)..................................................... 10

6

7

*New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*, 2010
WL 1473288 (S.D.N.Y. Mar. 29, 2010)..................................................... 6

8

*New Jersey Carpenters Health Fund* v. *Residential Capital, LLC*, 2010 WL
1257528 (S.D.N.Y. Mar. 31, 2010)........................................................... 6

9

10

*New Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group,
PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) .................................... 6

11

*New York Times* v. *Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686
(1964)................................................................................................... 13-14

12

13

*Precision Safety Innovations, Inc.* v. *Branson Ultrasonic Corp.*, 2005 WL
5801513 (C.D. Cal. 2005) ........................................................................ 3

14

*Shamley* v. *ITT Corp.*, 869 F.2d 167 (2d Cir. 1989)..................................... 15

15

*Stancik* v. *CNBC*, 420 F. Supp. 2d 800 (N.D. Ohio 2006) .............................. 5

16

*Swartz* v. *KPMG LLP*, 476 F.3d 765 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 9

17

*Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d
387 (S.D.N.Y. 2010)............................................................................... 6

18

19

*Ultramares Corp.* v. *Touche*, 255 N.Y. 170,  174 N.E. 441 (1931) ..................... 3, 5

20

*In re Wells Fargo Mortgage-Backed Certificates Litigation*, 2010 WL
1661534 (N.D. Cal. 2010) ...................................................................7-8, 8

21

22

**Statutes**

23

Credit Agency Reform Act of 2006 ("CRARA") 15 U.S.C. § 78o-7(c)(1)-(2) *passim*

24

Cal. Civ. Proc. Code § 425.16(a) ............................................................ 14

25

Cal. Civ. Proc. Code § 425.17.................................................................. 14

26

Cal. Civ. Code § 3294 ............................................................................. 15

27

**Federal Rules**

28

Federal Rule of Civil Procedure 9(b)....................................................... *passim*

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1

4

**Regulations and Rules**

5

H.R. Rep. No. 109-546, at 14 (2006)....................................................................... 11

6

**Treatises**

7

Restatement (Second) of Torts, Draft No. 11 § 552 at 56 (Apr. 15, 1965) ........... 3, 4

8

**Law Review Articles**

9

Timothy M. Sullivan, Note, *Federal Preemption and The Rating Agencies:*

10

*Eliminating State Law Liability to Promote Quality Ratings*, 94 Minn. L. Rev.

2136, 2153 (June 2010) .............................................................................................11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Reply Memorandum in
Support of Motion to Dismiss the FAC

1    Defendants Standard & Poor's Financial Services, LLC ("S&P") and

2    Moody's Investors Service, Inc. ("Moody's") (collectively, the "CRAs")

3    respectfully submit this joint reply memorandum of law in further support of their

4    motion to dismiss, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), the First Amended

5    Complaint (the "FAC") filed by plaintiffs Paul Rice and Joseph Rice (the

6    "Plaintiffs").

### I.    INTRODUCTION

8    Plaintiffs do not dispute that to state a claim for negligent misrepresentation,

9    they must allege that the CRAs owed them a duty of care.  Nor do they dispute that

10   under New York law this means they must allege a relationship of near-privity, and

11   under California law, that they were members of a limited group of intended

12   beneficiaries of the CRAs' credit rating opinions.  Accepting these standards (or at

13   least the California standard), Plaintiffs argue that a duty of care *did* exist in this

14   case because they were each "part of the class (investors) that rely on the [CRAs']

15   ratings to make investment decisions."  Opp. Br. at 6.  As demonstrated below, this

16   argument falls far short as a matter of law under either New York or California law.

17   The "class" to which Plaintiffs say they belong is not limited at all, but is a massive,

18   unlimited group of potential recipients of the CRAs' widely disseminated ratings —

19   a group consisting of millions of potential plaintiffs who could claim they relied on

20   the ratings for one of many purposes.  It is well established as a matter of law that

21   one cannot manufacture a duty of care by unilaterally choosing to rely on the

22   statements of an unknown third party.

23   Even if they could allege the existence of a duty of care with the CRAs,

24   Plaintiffs fail to identify any facts in their FAC to demonstrate the remaining

25   required elements of either of their claims, including that the CRAs' ratings

26   constituted actionable misstatements of fact.  In their opening brief, the CRAs cited

27   a long line of cases (some of them very recent) demonstrating that credit ratings are

28   statements of opinion and, as such, cannot constitute actionable misstatements

Defendants' Joint Reply Memorandum in
Support of Motion to Dismiss the FAC

unless it is alleged that the credit rating analysts responsible for those ratings did not actually *believe* their stated opinions.  Tellingly, Plaintiffs ignore *all* these cases and do not (because they cannot) point to any factual allegations in the FAC that could support the assertion that the CRAs' analysts disbelieved their ratings.  This point alone is dispositive of this motion.

Plaintiffs' opposition also ignores virtually all the authority cited in the CRAs' opening brief for the proposition that their non-fraud claims are: (i) preempted by the Credit Rating Agency Reform Act of 2006 ("CRARA"); and (ii) barred by fundamental principles of constitutional law.  On the first point, Plaintiffs fail to address at all the line of cases cited in the CRAs' opening brief, including Supreme Court rulings, interpreting various statutory preemption provisions like those contained in the CRARA to bar common law claims.  Similarly, plaintiffs fail to address any of the cases holding that credit ratings are protected by the First Amendment, choosing instead to rely on one case in which the relevant ratings — entirely unlike the ratings here — were allegedly disseminated only to a select group of investors.

Plaintiffs conclude their brief with a plea for yet another bite at the apple should the Court dismiss their claims.  Plaintiffs, however, have had enough chances to state a claim and should be given no more.  As the Court is aware from the CRAs' notice of motion, the parties met and conferred prior to the filing of the FAC.  During that process the CRAs explicitly identified to Plaintiffs multiple deficiencies in the original complaint.  The parties stipulated that Plaintiffs would have one additional chance to cure the deficiencies by the filing of an amended complaint.  However, the resulting FAC does not come anywhere near stating a viable claim and Plaintiffs offer no basis for concluding that they could do so.  Further amendment would thus be futile, and Plaintiffs' claims should be dismissed with prejudice.

## II.   ARGUMENT

### A.   THE CRAS DID NOT OWE PLAINTIFFS A DUTY OF CARE UNDER EITHER NEW YORK OR CALIFORNIA LAW

As set forth in the CRAs' opening brief, the relationship required to allege a duty of care under New York law is one of privity or its functional equivalent.[1] *See, e.g., Ultramares Corp.* v. *Touche*, 255 N.Y. 170, 182-83, 174 N.E. 441, 446 (1931). Under California law, a plaintiff must allege that it was a member of a "limited group of intended beneficiaries" of the defendant's representation in order to demonstrate the existence of a duty of care. *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992). Plaintiffs, effectively conceding that they cannot meet the standard under New York law, do not even address it. Nor can they even come close to satisfying the California test, which follows Restatement (Second) of Torts, Section 552. Plaintiffs do not (and cannot) point to any facts in the FAC that even begin to suggest they were members of a "narrow and circumscribed class of persons to whom or for whom the misrepresentations were made," *Bily*, 3 Cal. 4th at 408, and do not once allege any contact with the CRAs. As noted, they argue instead that a duty of care existed in this case because they were "part of the class (investors) that rely on the Defendants' ratings to make investment decisions." *See* Opp. Br. at 6.

Of course, there is nothing at all "narrow and circumscribed" about a "class of investors" that may have consulted or even relied on the CRAs' broadly

---

[1]   Plaintiffs incorrectly assert that *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938) mandates application of California law to their negligent misrepresentation claim merely because this action was removed from a California State Court. Opp. Br. at 5. The law is clear, however, that a federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Precision Safety Innovations, Inc.* v. *Branson Ultrasonic Corp.*, 2005 WL 5801513, *4 (C.D. Cal. 2005). As demonstrated in our opening brief, (The Rating Agencies' Joint Memorandum of Points and Authorities In Support of Their Motion to Dismiss the First Amended Complaint (the "Rating Agencies' JPA") at 4 n.3), California's choice of law rules mandate the application of New York law here, although as demonstrated below, Plaintiffs' negligent misrepresentation claim fails under the law of either state.

1   published opinions. This "class" would have no reasonable or principled

2   boundaries and would include many millions of potential investors around the

3   world, not to mention other potential users of credit ratings such as entities that did

4   business with, or extended credit to, Fannie Mae and Freddie Mac. Moreover, there

5   are no facts alleged in the FAC to demonstrate — as required under both California

6   and New York law — that either of the CRAs specifically intended to provide their

7   ratings of Fannie Mae and Freddie Mac to these specific Plaintiffs. *See, e.g., Bily*, 3

8   Cal. 4th at 394-95 (observing that Section 552 was intended to "'eliminate the

9   liability to the very large class of persons whom almost any negligently given

10  information may foreseeably reach and influence, and limit the liability, not to a

11  particular plaintiff defined in advance, but to the comparatively small group whom

12  the defendant expects and intends to influence'") (quoting Restatement (Second) of

13  Torts, Draft No. 11 § 552 at 56 (Apr. 15, 1965)).[2] *See also In re Enron Corp.*

14  *Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 826 (S.D. Tex

15  2005) (citing Comment (h) to Section 552 and noting that 552 "subjects the

16  negligent supplier of misinformation to liability only to those persons for whose

17  benefit and guidance it is supplied. . . . It is not enough that the maker knows of the

18  ever-present possibility of repetition to anyone, and the possibility of action in

19  reliance upon it, on the part of anyone to whom it may be repeated."); *id.* at 827

20  ("[A]llowing anyone to sue credit rating agencies who had read the credit rating

21  reports and claimed to have relied upon them and lost money in any endeavor that

22  person undertook would be fare more deleterious than beneficial to society as a

23  whole.").

24      This result is also grounded in well-settled public policy. If plaintiffs could

---

25  [2]   In the section of their brief regarding duty of care, Plaintiffs curiously cite
26  two cases, *Cohen* v. *S&S Construction Co.*, 151 Cal. App. 3d 941 (4th Dist.
    1983) and *Gagne* v. *Bertran*, 43 Cal. 2d 481 (1954) , which have no bearing
    on — and do not even address — the issue of duty. These cases (addressed
27  more fully below) stand for the proposition that in certain instances, with
    facts totally distinguishable from those in this case, statements of opinion can
28  constitute actionable statements of fact.

1    state a claim based on the sort of allegations at issue here, it would have an

2    overwhelming chilling effect on the willingness of any party (not just the CRAs) to

3    publish statements of opinion to the market as a whole. *Ultramares Corp.* v.

4    *Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931) (noting the unacceptable prospect

5    of "liability in an indeterminate amount for an indeterminate time to an

6    indeterminate class"). In *Gutter* v. *Dow Jones, Inc.*, 22 Ohio St. 3d 286, 490

7    N.E.2d 898 (Ohio 1986), for example, the court dismissed a negligent

8    misrepresentation claim brought against a newspaper by an investor. The plaintiff

9    claimed to have relied to his detriment on a report in the newspaper that certain

10   corporate bonds were "trading with interest." He alleged that the defendant

11   publisher "knew, or should have known" the report was inaccurate and that it

12   published the report "with the intent that investors rely" on it in making financial

13   decisions. *Id.* at 287. Dismissing the claim, the court concluded that "as a

14   newspaper reader, appellee does not fall within a special limited class (or group) of

15   foreseeable persons as set forth in Section (2)(a) [of Section 552]." *Id. See also*

16   *Ginsburg* v. *Agora, Inc.*, 915 F. Supp. 733, 739 (D. Md. 1995) (dismissing

17   negligent misrepresentation claim on the grounds that "[t]he publication is offered

18   to the general public and the information provided in the publication is of a general

19   nature, that is, it is not specifically tailored to [the] financial situation of any

20   individual subscriber"); *Stancik* v. *CNBC*, 420 F. Supp. 2d 800, 807-08 (N.D. Ohio

21   2006) (granting motion to dismiss action brought by viewer against financial cable

22   television network, noting that "[a] contrary result would in effect extend liability to

23   all the world and not a limited class"). As demonstrated in the CRAs' opening brief

24   the FAC establishes that the ratings, much like the alleged misrepresentations at

25   issue in the cases cited to above, were widely "disseminated around the world to the

26   vast investing public." Rating Agencies' JPA at 6. *See also, e.g.,* Pl's Compl. at ¶

27   (acknowledging the widespread dissemination of the ratings assigned to Fannie

28   Mae and Freddie Mac because Moody's and Standard and Poor's "published the

1    ratings").

2          The same public policy principles are applicable here. Accordingly,

3    Plaintiffs can establish no duty owed by the CRAs.

4    **B.    PLAINTIFFS FAIL TO ALLEGE ANY OF THE OTHER ELEMENTS REQUIRED TO STATE A CLAIM FOR NEGLIGENT**

5    **MISREPRESENTATION OR FRAUD**

6          Plaintiffs also cannot establish the other elements required to state a claim for

7    negligent misrepresentation or fraud including, most glaringly, the existence of any

8    misstatement of fact. As noted, Plaintiffs completely ignore the unbroken line of

9    recent cases holding that credit ratings are statements of opinion and, as such,

10   cannot constitute actionable misstatements unless made by a speaker who actually

11   disbelieves those opinions. *See e.g., New Jersey Carpenters Vacation Fund* v.

12   *Royal Bank of Scotland Group, PLC*, 2010 WL 1172694, at *14 (S.D.N.Y. Mar. 26,

13   2010) ("[C]redit ratings . . . are statements of opinion, as they are predictions of

14   future value and future protection of that value. . . . Plaintiffs can only demonstrate

15   an actionable misstatement if 'the opinion is both (1) not believed by the speaker

16   and (2) objectively untrue.'"); *In re Lehman Bros. Securities and ERISA Litigation*,

17   684 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2010); *In re IndyMac Mortgage Backed*

18   *Securities Litigation*, 2010 WL 2473243, at *11 (S.D.N.Y. June 21, 2010); *Tsereteli*

19   v. *Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 394-95

20   (S.D.N.Y. 2010); *New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital,*

21   *Inc.*, 2010 WL 1473288, at *8 (S.D.N.Y. Mar. 29, 2010); *New Jersey Carpenters*

22   *Health Fund* v. *Residential Capital, LLC*, 2010 WL 1257528, at *6 (S.D.N.Y. Mar.

23   31, 2010); *accord Gentry* v. *eBay, Inc.*, 99 Cal. App. 4th 816, 835 (4th Dist. 2002)

24   ("[E]xpressions of opinion are not generally treated as representations of fact, and

25   thus are not grounds for a misrepresentation cause of action.") (citations and

26   internal quotation marks omitted). Nor do Plaintiffs make any effort to deal with

27   other cases, such as the Sixth Circuit's decision in *Compuware Corp.* v. *Moody's*

28   *Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007), holding that a credit

1 rating "is a predictive opinion, dependent on a subjective and discretionary

2 weighing of complex factors" and "communicates [no] provably false connotation."

3      Plaintiffs' failure even to discuss these recent decisions makes it clear that

4 they simply have no way of rebutting the CRAs' argument on this fundamental, and

5 dispositive, issue. Rather than addressing directly applicable law, Plaintiffs instead

6 rely on older, inapposite, state court cases, including *Cohen* and *Gagne*, *supra* note

7 2, which do not involve rating agencies, or the sort of opinions about the future

8 upon which they have chosen to sue. In *Cohen*, for example, the court held that

9 plaintiffs could pursue a fraud claim against a real estate developer who allegedly

10 misrepresented that a certain development had "panoramic views" while allegedly

11 possessing facts establishing that it did not. *Cohen* v. *S&S Construction Co.*, 151

12 Cal. App. 3d 941, 946 (4th Dist. 1983) (citation omitted). This statement about the

13 present condition of a piece of property is in no way comparable to an opinion

14 about the future creditworthiness of debt issuers and securities. Plaintiffs' citation

15 to *Gagne* v. *Bertran*, 43 Cal. 2d 481 (1954) is equally unavailing since that case

16 involved undisputed statements of fact, not statements of opinion. The defendant in

17 that case, unlike the CRAs here, was specifically retained by the plaintiff and did

18 not offer an opinion at all. Rather, upon completion of his services — which

19 involved taking soil samples at a prospective construction site — he sent plaintiff a

20 letter containing certain verifiable facts which, according to the court, could

21 constitute actionable misrepresentations. *Id.* at 485 ("[D]efendant represented and

22 warranted to plaintiffs that there was no [soil] fill beyond 16 inches"). These

23 decisions, involving representations wholly unlike the rating opinions at issue,

24 would be unpersuasive even if there were not numerous contrary authorities dealing

25 specifically with ratings and the very issue before this Court. They certainly

26 provide Plaintiffs with no basis for ignoring – or refuting – these authorities.

27      Plaintiffs' only other case on this point is *In re Wells Fargo Mortgage-*

28 *Backed Certificates Litigation*, 2010 WL 1661534 (N.D. Cal. 2010), in which the

court dismissed claims against rating agencies (including the two CRAs in this case), holding that the rating agencies were not "underwriters" or "controlling persons" for purposes of Sections 11 and 15 of the Securities Act of 1933 with respect to certain mortgage-backed certificates.  The court allowed claims to proceed against the non-rating agency defendants, finding that the complaint included allegations "sufficient to establish an actionable misstatement with respect to the *rating process*."  *Id.* at *12. (emphasis added).  This finding has no applicability here for several reasons.  First, the court in *Wells Fargo* did not specifically find that credit ratings, as opposed to statements about the underlying credit rating process, were actionable.  Here, by contrast, the FAC alleges only that the CRAs' actual ratings (*i.e.,* the CRAs' statements of opinion) are false and misleading — an assertion that has been uniformly rejected by the array of federal court decisions cited above.  Second, *Wells Fargo* involved the rating process for a specific type of mortgage-backed certificates, not for the preferred stock of Fannie Mae or Freddie Mac or any comparable entity.  Third, the holding applied to representations by other parties, not by the rating agencies, *about* the rating agencies' process.  And, fourth, in finding that the statements about the rating process were actionable misrepresentations, the *Wells Fargo* court relied on factual allegations that purportedly supported the claim – in complete contrast to the complaint here, which, as discussed below does not (and plainly cannot), offer anything but conclusory allegations.[3]

Plaintiffs' inability to state a claim is highlighted by their failure even to

[3] Moreover, *Wells Fargo* is not only inapposite but also, the CRAs respectfully submit, wrongly decided and at odds with all the decisions cited above (which evaluated virtually identical allegations).  The *Wells Fargo* court relied on allegations about a 2008 SEC report and what the court described as "'statements by executives'" of the rating agencies in which the executives admitted that they were aware at the time the subject ratings were made that the agencies' rating models were outdated."  *Wells Fargo*, 2010 WL 1661534, at *12.  As the decision in *In re Lehman* and the other above-cited cases recognized, *nothing* in any of these allegations referenced by the *Wells Fargo* court speaks to the subjective intent of the CRAs in rating the offerings at issue in that case.

1   address, much less satisfy, Federal Rule of Civil Procedure 9(b), which requires

2   both of their claims (negligent misrepresentation and fraud) to be pled with

3   particularity. This means that Plaintiffs must allege not only "the time, place and

4   content" of any alleged misrepresentations, but also the "circumstances indicating

5   falseness." As demonstrated in the CRAs' opening brief, the most Plaintiffs can

6   allege here are broad, conclusory assertions that, for example, the CRAs "had

7   knowledge that [Fannie Mae and Freddie Mac] were in financial trouble and were

8   bad risks" (FAC ¶18), and that "defendants knew the ratings were false because the

9   models, data and assumptions used to rate Fannie Mae and Freddie Mac were

10  unreasonable, false, and based on pure speculation." Opp. Br. at 10. In addition to

11  their other dispositive failings, Plaintiffs' claims are insufficient as a matter of law

12  because there are no facts alleged to support these sweeping and conclusory

13  assertions, *i.e.*, there is no effort to allege *why* or *how* the CRAs' models, data and

14  assumptions were "unreasonable" or "false" or "speculative," and no discussion at

15  all about the "circumstances" surrounding these alleged misstatements.

16      Indeed, Plaintiffs all but admit that they have no actual facts to support these

17  allegations by making their assertions "upon information and belief" — a fact that

18  by itself requires dismissal given the lack of any supporting factual basis. *See*

19  *Clemens* v. *DaimlerChrysler Corp.*, 2006 WL 6022681, at *1 (C.D. Cal. 2006)

20  ("Fraud allegations based on 'information and belief' do not satisfy the particularity

21  requirements of Rule 9(b), unless the complaint sets forth the facts on which the

22  belief is founded.") (citing *Comwest, Inc.* v. *American Operator Services, Inc.*, 765

23  F. Supp. 1467, 1471 (C.D. Cal. 1991)). Ultimately, Plaintiffs' allegations amount

24  simply to an expression of their view that, looking back, the ratings on securities

25  they purchased should have been lower. Such allegations fall far short of stating a

26  claim for either negligent misrepresentation or fraud.[4]

27  ---

    [4] Plaintiffs also do nothing to cure the FAC's dispositive failure under Rule
28  9(b) to distinguish among multiple defendants instead of grouping allegations
    against "Defendants" as a group. *See, e.g.*, Pl's Compl., at ¶29. As noted in

## C.   THE CREDIT RATING AGENCY REFORM ACT OF 2006 PREEMPTS PLAINTIFFS' NEGLIGENCE-BASED CLAIMS

Plaintiffs also offer no meaningful response on the issue of preemption. Indeed, Plaintiffs do not even address the decisions — including U.S. Supreme Court decisions — cited in the CRAs' opening brief which demonstrates that CRARA preempts state negligent misrepresentation claims. Instead, Plaintiffs rely exclusively on an unpublished state court opinion in *California Public Employees' Retirement System* v. *Moody's Corp. et al.* No. 09-490241 (Cal. Super. Ct. Apr. 30, 2010) ("Calpers"), which they quote at length without citation. *Compare* Opp. Br. at 13-14 *with Calpers*, slip op. at 9-10. The Superior Court ruling, which itself contained no analysis of federal preemption law, was erroneous.

The court in *Calpers* offered little analysis of CRARA's preemption provisions and instead relied almost exclusively on *In re National Century Financial Enterprises, Inc., Investment Litigation*, 580 F. Supp. 2d 630 (S.D. Ohio 2008) ("*NCFE*"). In *NCFE*, however, the court, noting that the issue had received "little briefing" in that case, expressly stated that it was "refrain[ing] from deciding the issue until it has the benefit of full briefing from the parties." 580 F. Supp. 2d at 651-52. Moreover, both the *NCFE* court and the *Calpers* court recognized that the CRARA prohibits states from "tell[ing] [CRAs] what ratings they should give or dictat[ing] how they arrive at their ratings." *NCFE*, 580 F. Supp. 2d at 651; *see Calpers*, slip op. at *9 (noting that "the goal of CRARA is to avoid states setting conflicting standards regarding how ratings should be conducted"). Yet that is precisely what common-law actions seeking damages do and have repeatedly been

the CRAs' opening brief, this alone is grounds for dismissal. *See Swartz* v. *KPMG LLP*, 476 F.3d 456, 765 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' In the context of a fraud suit involving multiple defendants, a plaintiff must, *at a minimum*, 'identif[y] the role of [each] defendant [ ] in the alleged fraudulent scheme.'") (emphasis added and citations omitted).

1   held to do.  *See* Rating Agencies' JPA at 17-19.

2        A recent law review article on the preemptive effect of CRARA makes just

3   that point, concluding that "[b]oth Supreme Court jurisprudence and the ordinary

4   meaning of 'regulate' point toward construing that word to include private causes

5   of action in the context of a preemption clause."  Timothy M. Sullivan, Note,

6   *Federal Preemption and The Rating Agencies: Eliminating State Law Liability to*

7   *Promote Quality Ratings*, 94 Minn. L. Rev. 2136, 2153 (June 2010).  The article

8   concludes, after detailed analysis of the CRARA language and relevant cases, that it

9   was likely that "Congress intended to preempt all claims against rating agencies

10  registered as NRSROs except enforcement actions brought by regulatory agencies

11  on theories of rating agency fraud or deceit."  *Id*. at 2156.  Such preemption, the

12  article explains, reflects the Congressional goal of improving ratings quality in part

13  by promoting uniformity across jurisdictions.

14       Careful examination of the legislative purpose behind CRARA fully supports

15  application of its preemptive effect on this case.  In adopting CRARA, Congress

16  determined *not* that NRSROs should be free from regulation, but that the SEC was

17  the appropriate body to do the regulating.  *See* H.R. Rep. No. 109-546, at 14 (2006)

18  ("NRSROs will be held accountable under the securities laws: The SEC will be

19  able to inspect, examine, and bring enforcement actions against rating agencies

20  under the 1934 Act.").  Congress also expressed, in the clearest language, its intent

21  to preserve the credit ratings agencies' independence in reaching rating opinions

22  and to protect their underlying procedures and methodologies.  *See* H.R. Rep. No.

23  109-546, at 14 (2006) ("Congress and the SEC must be cautious not to intrude into

24  the ratings procedures and methodologies. H.R. 2990 does not intrude into these

25  procedures and the Manager's Amendment expressly affirms that the SEC may not

26  intrude into the ratings procedures and methodologies.").

27

28

**D.    PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ARE ALSO BARRED BY FUNDAMENTAL CONSTITUTIONAL PRINCIPLES**

As previously established, (*see* Rating Agencies' JPA, at 19-24), Plaintiffs' non-fraud claims are also barred by fundamental principles of constitutional law. This is true both because the publicly-disseminated credit ratings that Plaintiffs seek to attack are non-actionable expressions of opinion and because Plaintiffs fail to allege that the CRAs acted with actual malice.

Plaintiffs respond by citing to only one decision, *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009), which actually serves to reinforce the CRAs' First Amendment protections in this case. The court in *Abu Dhabi* recognized unequivocally that "[i]t is well-established that under typical circumstances, the First Amendment protects rating agencies, subject to an 'actual malice' exception, from liability arising out of their issuance of ratings and reports because their ratings are matters of public concern." *Id.* at 175.  The decision is in accord with the extensive body of case law that has repeatedly and consistently recognized that, at its core, the CRAs' speech – opinions about securities that are disseminated to the investing public – implicate the First Amendment and are entitled to its protections.  *See, e.g., Compuware*, 499 F.3d at 529; *Jefferson County School District No. R-1* v. *Moody's Investor's Services, Inc.*, 175 F.3d 848, 856 (10th Cir. 1999); *County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151, 157 (C.D. Cal. 1999); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 808-27 (S.D. Tex. 2005).

While acknowledging that the First Amendment applies in "typical circumstances," the court in *Abu Dhabi* found that at the motion to dismiss stage it was bound to accept the affirmative and specific allegations made by the plaintiff in that case that the ratings on a particular and identified issuer "were never widely disseminated, but were provided instead in connection with a private placement to a select group of investors."  651 F. Supp. 2d at 176.  As such, the court held that

1  dismissal on First Amendment grounds was not appropriate at that procedural stage.

2  No such circumstances are, or could be, alleged here.  Indeed, Plaintiffs here

3  explicitly acknowledge that the CRAs' ratings on Fannie Mae and Freddie Mac

4  were "published," (Pl's Compl., at ¶ 18), and "made by the Defendants to the *large*

5  *group of investors* that included the Plaintiffs."  (Opp. Br. at 15-16).  This fact is

6  further evidenced by the ratings reports themselves.  *See* June 28, 2010 Declaration

7  of David T. Biderman in Support of Joint Motion to Dismiss, Exs. 1 and 2; *see also*

8  June 28, 2010 Declaration of Joshua M. Rubins, exs. 1 and 2.[5]  There can be no

9  serious dispute, therefore, that the ratings in this case – ratings which are of the

10  highest public concern because they relate to Government-Sponsored Enterprises

11  that receive support from the Federal government and assume public

12  responsibilities – fall within the "typical circumstances" consistently recognized by

13  the courts.  *See, e.g.,* http:/www.fanniemae.com/kb/index?page=home&c=aboutus

14  (defining Fannie Mae as a Government-Sponsored Enterprise).

15      Plaintiffs also argue that the CRAs' credit ratings lack First Amendment

16  protection because they relate to "economic activity."  Opp. Br. at 15.  This

17  argument is flatly wrong as a matter of law and lacks any support whatsoever in

18  decades of relevant First Amendment precedent.  *See New York Times* v. *Sullivan*,

19  376 U.S. 254, 266, 84 S. Ct. 710, 718, 11 L.Ed.2d 686 (1964) ("The publication

---

20  [5]  Plaintiffs argue that the Court may not consider these declarations.  The

21  Ninth Circuit has clearly held, however, that a "court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss

22  without converting the motion to dismiss into a motion for summary judgment," (*Lee* v. *City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)), and that a defendant may place before the court such documentation

23  even if "the document are not physically attached to the complaint" so long as the plaintiff does not challenge the "authenticity" of the document and the

24  "complaint necessarily relies" on them.  *Id.* (citation omitted).  "Second, under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public

25  record.'"  *Id.*  Here, the CRA Declarations and attached documentation were offered merely for the limited purpose of establishing the existence of the

26  judicially noticeable fact that each CRA is headquartered in New York. Rating Agencies' JPA, at 19 n.10.  Moreover, the publications attached to the

27  CRA Declarations were referenced in the FAC when Plaintiff alleged that the CRAs published their ratings on Fannie Mae and Freddie Mac.  Pl's Comp.,

28  at 17 (stating that Moody's and S&P published the ratings allegedly assigned by each CRA to the Fannie Mae and Freddie Mac securities).

---

Defendants' Joint Reply Memorandum in
                                                                        Support of Motion to Dismiss the FAC

1   here was not a 'commercial advertisement' . . . . It communicated information,

2   expressed opinion . . . . That the Times was paid for publishing the advertisement is

3   as immaterial in this connection as is the fact that newspapers and books are sold.");

4   *Burstyn* v. *Joseph Wilson, Inc.*, 343 U.S. 495, 501-02, 72 S. Ct. 777, 780, 96 L.Ed.

5   1098 (1952) ("It is urged that motion pictures do not fall within the First

6   Amendment's aegis because their production, distribution, and exhibition is a large-

7   scale business conducted for private profit.  We cannot agree.  That books,

8   newspapers, and magazines are published and sold for profit does not prevent them

9   from being a form of expression whose liberty is safeguarded by the First

10  Amendment.  We fail to see why operation for profit should have any different

11  effect in the case of motion pictures.").  A particularly apposite case is *Lowe* v.

12  *SEC*, 472 U.S. 181, 210 n.58, 105 S. Ct. 2557, 2573 n.58, 86 L.Ed.2d 130 (1985) in

13  which the Supreme Court observed that "because we have squarely held that the

14  expression of opinion about a commercial product such as a loudspeaker is

15  protected by the First Amendment, . . . it is difficult to see why the expression of an

16  opinion about a marketable security should not also be protected." *Id.* (citation

17  omitted).[6]

18          Plaintiffs alternatively argue that they have alleged actual malice here by

19

---

[6]   Plaintiffs invocation of California's anti-SLAPP statutes is equally unpersuasive in the context of the protections afforded the CRAs' opinions by the First Amendment. The anti-SLAPP statute reflects California's efforts to provide some forms of expression heightened protection against lawsuits that may seek "to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a). This special motion to strike is not available to a defendant when an action is "brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person" when the statements are "representations of fact" designed to promote or sell the product to a potential purchaser. Cal. Civ. Proc. Code § 425.17. The CRAs' opinions do not fit within the language of the anti-SLAPP exception – they are not representations of fact – but in any event, that section does not purport to (and could not) delineate the line between protected and unprotected speech under the First Amendment.  California was not constitutionally obliged to enact the anti-SLAPP statute at all and its decision about what speech to protect under a procedural statute does not and could not affect the determination of what the First Amendment does protect.

1 pointing to the formulaic and rote recitation of the standard set forth in the FAC as
2 grounds for California Civil Code § 3294 "entitling Plaintiffs to punitive damages
3 in an amount appropriate to punish or set an example of Defendants." (Pl's
4 Compl., at ¶ 42; Opp. Br. at 16). As established in the CRAs' opening brief, these
5 sort of conclusory allegations are wholly insufficient to support a finding of actual
6 malice in connection with the Fannie Mae and Freddie Mac ratings. *See Enron*,
7 511 F. Supp. 2d at 825 (finding insufficient to establish actual malice the
8 "conclusory allegations regarding the CRAs" because such allegations do not
9 "satisfy any of the specific, enhanced pleading requirements established by courts
10 to overcome First Amendment protection"). *See also Barger* v. *Playboy*
11 *Enterprises, Inc.*, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983) (conclusory allegation
12 that defendant acted "recklessly" was insufficient to constitute an allegation of
13 actual malice); *Shamley* v. *ITT Corp.*, 869 F.2d 167, 173 (2d Cir. 1989) (allegations
14 of malice "must be supported by sufficient evidentiary facts").

### E.   LEAVE TO AMEND THE FIRST AMENDED COMPLAINT SHOULD BE DENIED BECAUSE SUCH LEAVE WOULD BE FUTILE

15
16
Plaintiffs have already had two opportunities to set forth facts that support
17 viable causes of action. Indeed, one of these opportunities came after a meet and
18 confer session with the CRAs' counsel during which numerous deficiencies with
19 the original complaint were explicitly identified. Plaintiffs have failed to cure these
20 many deficiencies because there exist no facts upon which they can possibly do so
21 – no matter how many times they are allowed to replead their claims. This patent
22 inability to cure the overwhelming deficiencies identified during two separate meet
23 and confer sessions mandates dismissal with prejudice.
24
Any attempt by Plaintiff to cure the continuing defects of the FAC – in yet a
25 third attempt at properly pleading claims against the CRAs – would be futile for the
26 reasons discussed more fully at 3-16, *supra*. Plaintiffs are unable as a matter of law
27 to state facts that would entitle them to relief under any of their three asserted
28

1   causes of action.  This futility of amendment warrants dismissal with prejudice of

2   the entire FAC.

3                                   **III.   CONCLUSION**

4        For the foregoing reasons, the CRAs' motion to dismiss with prejudice the

5   claims asserted against them in the FAC should be granted.

6

7   DATED:  July 26, 2010                    /s/ David T. Biderman

8                                            Floyd Abrams (admitted *pro hac vice*)
                                             Brian T. Markley (admitted *pro hac vice*)
9                                            **CAHILL GORDON & REINDEL LLP**
                                             80 Pine Street
10                                           New York, New York  10005
                                             Telephone: (212) 701-3000
11                                           Facsimile: (212) 269-5420

12                                           David T. Biderman (SBN 101577)
                                             Judith B. Gitterman (SBN 115661)
13                                           **PERKINS COIE LLP**
                                             1888 Century Park East, Suite 1700
14                                           Los Angeles, CA  900671
                                             Telephone: (310) 788-9900
15                                           Facsimile: (310) 788-3399

16                                           *Attorneys for Standard & Poor's Financial Services, LLC*

17                                           /s/ Frank A. Silane (as authorized on July 26, 2010)

18
19                                           James J. Coster (admitted *pro hac vice*)
                                             James Regan (admitted *pro hac vice*)
20                                           Joshua M. Rubins (admitted *pro hac vice*)
                                             **SATTERLEE STEPHENS BURKE & BURKE LLP**
21                                           230 Park Avenue, 11th Floor
                                             New York, New York  10169
22                                           Telephone: (212) 818-9200
                                             Facsimile: (212) 818-9606

23                                           Frank A. Silane (SBN 90940)
                                             Scott D. Cunningham (SBN 200413)
24                                           **CONDON & FORSYTH LLP**
                                             1901 Avenue of the Stars, Suite 850
25                                           Los Angeles, CA  90067-6010
                                             Telephone: (310) 557-2030
26                                           Facsimile: (310) 557-1299

27                                           *Attorneys for Defendant Moody's Investors Service, Inc.*

28

**PROOF OF SERVICE BY MAIL**

I am a citizen of the United States and employed in Los Angeles, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1888 Century Park East, Suite 1700, Los Angeles, California  90067-1721.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  On July 26, 2010, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

in a sealed envelope, postage fully paid, addressed as follows:

**Attorney for Plaintiffs**

| | |
|---|---|
| Jordan Tyler Porter, Esq. | Lowell Haky, Esq. |
| Law Offices of Eric A. Woosley | Vice President & Associate General |
| 1602 State Street | Counsel |
| Santa Barbara, CA 93101 | Charles Schwab & Co., Inc. |
| Tel:  (805) 897-1830 | 101 Montgomery Street |
| Fax:  (805) 897-1834 | San Francisco, California 94104 |

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 26, 2010, at Los Angeles, California.

Sharon Jones