LAW OFFICE OF ERIC A. WOOSLEY
1602 State Street
Santa Barbara, CA 93101
(805) 897-1830 FAX: (805) 897-1834

Eric A. Woosley (State Bar No. 211962)
Jordan T. Porter (State Bar No. 250112)

Attorneys for Plaintiffs PAUL RICE and JOSEPH RICE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DISTRICT

BY FAX

| | |
|---|---|
| PAUL RICE and JOSEPH RICE<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES SCHWAB; MOODY'S INVESTORS SERVICE; STANDARD & POOR's; DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. SACV 10-00398CJC (MLGx)<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. **NEGLIGENCE AGAINST ALL DEFENDANTS**<br>2. **NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS**<br>3. **INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS** |

1. Plaintiff Paul Rice is, and at all relevant times was, a resident of the City of Dana Point, County of Orange, State of California, and a trustee and beneficiary under the Rice Family Trust u/a dated February 7, 2007 ("Rice Family Trust.").

2. Plaintiff Joseph Rice is, and at all relevant times was, a resident of the City of Sterling Heights, County of Macomb, State of Michigan, and a beneficiary under the Rice

1

Family Trust.

3. Plaintiffs are informed and believe, and thereon allege, that at all relevant times Defendant Moody's Investors Service was a corporation conducting business in the County of Orange, State of California.

4. Plaintiffs are informed and believe, and thereon allege, that at all relevant times Defendant Standard & Poor's was a corporation conducting business in the County of Orange, State of California.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sues said defendants by such fictitious names and Plaintiffs will seek to amend this Complaint to show their true names and capacities when the same has been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated herein as DOE are legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiffs as alleged herein. Each reference in this Complaint to "defendant", "defendants" or a specifically named defendant refers also to all defendants sued under fictitious names. Plaintiffs are informed and believe that each DOE defendant was responsible in some manner for the occurrences and injuries alleged in this Complaint.

6. Plaintiffs are informed and believe, and based thereon alleges, that at all times herein mentioned each of the

defendants was the agent, employee and servant of each of the remaining defendants, and in doing the things hereinafter alleged was acting within the scope of such agency, employment, and servitude, with the knowledge and consent of each of the defendants. Whenever this Complaint makes reference to "defendant" or "defendants", and "each of them," such allegations shall be deemed to mean the acts of defendants acting individually, jointly and/or severally.

### GENERAL ALLEGATIONS

7. In or about January 2008, Plaintiffs, and each of them, were beneficiaries and had an ownership interest in an investment account held by Charles Schwab under the name A. Rice and P. Rice, Trustees, Rice Family Trust (the "Rice Account").

8. On or about January 23, 2008, Plaintiff Joseph Rice received a Fixed Income Offering Report from Charles Schwab recommending purchase of preferred shares of Fannie Mae with a dividend rate of 8.25 percent. These shares were rated AA by Defendant Moody's Investor Services and AA3 by Standard & Poor's. These representations, and every other representation referred to in this First Amended Complaint were made to the Plaintiffs in California.

9. On or about January 25, 2008, Plaintiff Joseph Rice purchased 4,000 shares of the Fannie Mae 8.25 percent preferred stock for the Rice Account at a total price of $104,482.95.

10. On or about February 13, 2008, at his home in California, Plaintiff Paul Rice received a Fixed Income Offering Report from Charles Schwab also recommending the purchase of

3

1  Fannie Mae preferred shares at 8.25 percent dividend. These
2  shares were still rated AA by Defendant Moody's Investor Services
3  and AA3 by Standard & Poor's.
4      11. On February 13, 2008 Plaintiff Paul Rice purchased an
5  additional 2,000 shares of the Fannie Mae 8.25 percent preferred
6  stock for the Rice Account for a total price of $52,210.
7      12. On or about February 13, 2008, in the aforementioned
8  Fixed Income Offering Report, Schwab recommended the purchase of
9  preferred shares of Freddie Mac with a dividend rate of 8.375
10 percent, which shares were rated AA by Defendant Moody's Investor
11 Services and AA3 by Standard & Poor's.
12     13. On or about February 14, 2008 Paul Rice purchased for
13 the Rice Account 2,000 shares of the Freddie Mac 8.375 percent
14 preferred shares. Plaintiff paid $53,069.95 for these shares.
15     14. On or about May 6, 2008, at his home in California,
16 Plaintiff Paul Rice received a Fixed Income Offering Report from
17 Charles Schwab recommending the purchase of the same Freddie Mac
18 preferred shares with a dividend rate of 8.375 percent. The
19 Freddie Mac preferred shares continued to be rated AA by
20 Defendant Moody's Investor Services and AA3 by Standard & Poor's.
21     15. On or abut May 7, 2008 Plaintiff Paul Rice purchased
22 for the Rice Account 2,000 shares of the Freddie Mac 8.375
23 percent preferred stock at a total price of $51,188.95.
24     16. At the time of each of the aforementioned offerings in
25 January, February and May 2008, Moody's directly communicated
26 published ratings to the Plaintiffs of AA, and Standard & Poor's
27 directly communicated published rating to the Plaintiffs of AA3,
28

for the Fannie Mae securities identified above.

17. Plaintiffs are informed and believe and thereon allege that at the time that Defendant Moody's Investor Services published the AA and AA3 by Standard & Poor's ratings regarding the subject securities, they were aware that Fannie Mae and Freddie Mac were in financial trouble and were bad risks.

18. Plaintiffs are informed and believe and thereon allege that Defendants Moody's and Standard & Poor's, had knowledge that Fannie Mae and Freddie Mac were in financial trouble and were bad risks as far back as 2007. Despite such knowledge, Moody's and Standard & Poor's published the ratings and buy recommendations, which were misleading and omitted material facts known to Defendants that, had they been known to Plaintiffs, would have materially affected Plaintiffs' decision with regard to the purchase of the subject securities.

19. Plaintiffs, by and through the Rice account, purchased the Fannie Mae and Freddie Mac securities in reliance on the published ratings and recommendations, as well as tax benefits, made by Defendants.

20. In August 2008, Defendant Standard & Poor's suddenly downgraded its ratings of Fannie Mae and Freddie Mac preferred stock by several steps to Baaa3, the lowest investment grade rating. Defendant Moody's followed suit shortly thereafter, downgrading Fannie and Freddie preferred stock to junk status.

21. In or about September 2008 Fannie Mae and Freddie Mac were placed into conservatorship overseen by the Federal Housing Finance Agency. As a consequence, all dividends from the

5

**SECOND AMENDED COMPLAINT**

preferred shares have been eliminated and the stock has virtually no value.

### FIRST CAUSE OF ACTION

### (Negligence Against All Defendants)

22. Plaintiffs incorporate by reference all preceding paragraphs as fully set forth herein.

23. Defendants represented to Plaintiffs that they possessed special skill, knowledge and reputation to evaluate and capably engage in the recommendation of investments suitable for Plaintiff. Defendants also knew that Plaintiffs would be relying totally on Defendants' professed superior knowledge and expertise. Defendants specifically intended that the Plaintiffs would rely on their credit ratings, and further represent that "credit ratings and research help investors analyze the credit risks associated with fixed-income securities. Such independent credit ratings and research also contribute to efficiencies in fixed-income markets and other obligations, such as insurance policies and derivative transactions, by providing credible and independent assessments of credit risk," and that "credit ratings have achieved wide investor acceptance as convenient tools for differentiating credit quality."

24. Because of their superior knowledge and expertise, and the position of trust they occupied with Plaintiffs, the Defendants owed Plaintiffs a duty to act with the utmost care to provide reliable information upon which Plaintiffs could foreseeably act in making investment decisions and transactions.

25. In breach of the duty it owed to Plaintiffs, Defendants

6

published buy recommendations and ratings that were not substantiated by the known facts and misled Plaintiffs into purchasing highly risky securities that ultimately lost all value.

26. In breach of the duty it owed to Plaintiffs, Defendant Moody's Investor Services, as set forth above, published AA and Standard & Poor's AA3 ratings regarding the subject securities that were not substantiated by the known facts and mislead Plaintiffs into purchasing highly risky securities that ultimately lost all value.

27. As a proximate result of these breaches of the duties that Defendants owed to Plaintiffs, the Plaintiffs suffered monetary losses in a sum to be proven at the time of trial.

**SECOND CAUSE OF ACTION**

**(Negligent Misrepresentation Against All Defendants)**

28. Plaintiffs incorporate by reference all preceding paragraphs as fully set forth herein.

29. The Defendants made the following representations to the Plaintiffs:

A. On or about January 23, 2008, Defendant Moody's Investor Services represented to Plaintiffs that Fannie Mae with a dividend rate of 8.25 percent rated AA. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

B. On or about January 23, 2008, Defendant Standard & Poor's represented to Plaintiffs that Fannie Mae with a dividend rate of 8.25 percent rated AA3. These representations, and every other

7

representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

C. On or about February 13, 2008, Defendant Moody's Investor Services represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

D. On or about February 13, 2008, Defendant Standard & Poor's represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA3. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

E. On or about May 6, 2008, Defendant Moody's Investor Services represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

F. On or about May 6, 2008, Defendant Standard & Poor's represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA3. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

30. The ratings of AA and AA3 were designed by the Defendants to, and in fact did, communicate factual information to the Plaintiffs that Fannie Mae and Freddie Mac preferred stock were: 1) nearly risk free; 2) were as safe, secure and reliable as high quality corporate or government bonds; 3) had an extremely low

probability of transitioning to junks status; 4) had a high likelihood of recovery in the rare event of default; 5) had been rated by objective, independent third parties whose impartiality was not impaired by significant conflicts of interest; and 6) had been rated on the basis of current, accurate and complete data and analysis using reasonable and true models and assumptions. In fact both the ratings and the factual information conveyed by those ratings were false.

31. Plaintiffs are informed and believe, and thereon allege, that Defendants knew the ratings (and information conveyed by those ratings) were false because the models, data and assumptions used to rate Fannie Mae and Freddie Mac were unreasonable, false, and based on pure speculation. In or around 2004, in order to compete with rival credit rating agencies, the Defendants eased their credit-rating methods, used inaccurate and stale information to rate Fannie Mae's and Freddie Mac's assets and failed to monitor those assets after preferred stock was sold to investors. Further, Plaintiffs are informed and believe and thereon allege that Defendants Moody's and Standard & Poor's, had knowledge that Fannie Mae and Freddie Mac were in financial trouble and were bad risks as far back as 2007. Despite such knowledge, Moody's and Standard & Poor's published the ratings and buy recommendations, which were misleading and omitted material facts known to Defendants that, had they been known to Plaintiffs, would have materially affected Plaintiffs' decision with regard to the purchase of the subject securities.

///

32. Plaintiffs are further informed and believe, and thereon allege, that if the aforementioned representations were not intentionally or fraudulently made, that Defendant had no reasonable grounds for believing that the representations to be true when they were made. In August 2008, Defendant Standard & Poor's suddenly downgraded its ratings of Fannie Mae and Freddie Mac preferred stock by several steps to Baaa3, the lowest investment grade rating. Defendant Moody's followed suit shortly thereafter, downgrading Fannie and Freddie preferred stock to junk status.

33. Plaintiffs reasonably relied on the aforementioned representations and recommendations of Defendants. At the time the Plaintiffs invested, they believed that Fannie Mae's and Freddie Mac's preferred stock AA and AA3 ratings were a "credible and independent assessments of credit risk," were nearly risk free, were as safe, secure and reliable as high quality corporate or government bonds, had an extremely low probability of transitioning to junks status, had a high likelihood of recovery in the rare event of default, had been rated by objective, independent third parties whose impartiality was not impaired by significant conflicts of interest, and had been rated on the basis of current, accurate and complete data and analysis using reasonable and true models and assumptions.

34. Plaintiffs' reliance on Defendants' representations and recommendations, was a substantial factor in causing harm to the Plaintiffs in that their decisions to buy the subject securities were predicated on the representations made by Defendants.

///

35. Plaintiffs have been harmed and have suffered damages, in an amount to be proven at time of trial, as a result of their reliance upon Defendants' representations and recommendations.

### THIRD CAUSE OF ACTION

### (Intentional Misrepresentation Against All Defendants)

36. Plaintiffs incorporate by reference all preceding paragraphs as fully set forth herein.

37. The Defendants made the following representations to the Plaintiffs:

A. On or about January 23, 2008, Defendant Moody's Investor Services represented to Plaintiffs that Fannie Mae with a dividend rate of 8.25 percent rated AA. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

B. On or about January 23, 2008, Defendant Standard & Poor's represented to Plaintiffs that Fannie Mae with a dividend rate of 8.25 percent rated AA3. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

C. On or about February 13, 2008, Defendant Moody's Investor Services represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

D. On or about February 13, 2008, Defendant Standard & Poor's represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA3. These representations, and

11

every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

E.  On or about May 6, 2008, Defendant Moody's Investor Services represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

F.  On or about May 6, 2008, Defendant Standard & Poor's represented to Plaintiffs Fannie Mae preferred shares at 8.25 percent dividend were still rated AA3. These representations, and every other representation referred to in this Second Amended Complaint were made to the Plaintiffs in California.

38.  The ratings of AA and AA3 were designed by the Defendants to, and in fact did, communicate factual information to the Plaintiffs that Fannie Mae and Freddie Mac preferred stock were: 1) nearly risk free; 2) were as safe, secure and reliable as high quality corporate or government bonds; 3) had an extremely low probability of transitioning to junks status; 4) had a high likelihood of recovery in the rare event of default; 5) had been rated by objective, independent third parties whose impartiality was not impaired by significant conflicts of interest; and 6) had been rated on the basis of current, accurate and complete data and analysis using reasonable and true models and assumptions. In fact both the ratings and the factual information conveyed by those ratings were false.

39.  Plaintiffs are informed and believe, and thereon allege, that Defendants knew the ratings (and information conveyed by those

12

ratings) were false because the models, data and assumptions used to rate Fannie Mae and Freddie Mac were unreasonable, false, and based on pure speculation. In or around 2004, in order to compete with rival credit rating agencies, the Defendants eased their credit-rating methods, used inaccurate and stale information to rate Fannie Mae's and Freddie Mac's assets and failed to monitor those assets after preferred stock was sold to investors. Further, Plaintiffs are informed and believe and thereon allege that Defendants Moody's and Standard & Poor's, had knowledge that Fannie Mae and Freddie Mac were in financial trouble and were bad risks as far back as 2007. Despite such knowledge, Moody's and Standard & Poor's published the ratings and buy recommendations, which were misleading and omitted material facts known to Defendants that, had they been known to Plaintiffs, would have materially affected Plaintiffs' decision with regard to the purchase of the subject securities.

40. Plaintiffs are informed and believe, and thereon allege, that the aforementioned representations and recommendations were false and made intentionally or recklessly and without regard for their truth.

41. Plaintiffs reasonably relied on the aforementioned representations and recommendations of Defendants.

42. Plaintiffs' reliance on Defendants' misrepresentations and promises was a substantial factor in causing harm to Plaintiffs.

43. Plaintiffs have been harmed and have suffered damages, in an amount to be proven at time of trial, as a result of their reliance upon Defendant's promises and representations.

///

13

SECOND AMENDED COMPLAINT

44. Plaintiffs are informed and believe, and thereon allege, that Defendants' conduct as described herein was intended by Defendants to cause injury, or was undertaken with the knowledge that injury and damages to Plaintiffs was probable and likely, such that the conduct was despicable and carried on by Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights, and were intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intent to deprive Plaintiffs of property, legal rights, or to otherwise cause them injury, so as to constitute malice, oppression, and/or fraud under California Civil Code §3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

WHEREFORE, Plaintiffs pray for judgment against the Defendant as follows:

1. Compensatory damages in an amount subject to proof at trial;

2. General damages according to proof;

3. Punitive or exemplary damages to be determined by the trier of fact;

4. For prejudgment interest on said sums at the legal rate, commencing upon the date the Complaint was filed;

5. Costs incurred in this action;

6. Attorneys' fees as provided by contract or statute;

7. For such other and further relief as the Court may deem just and proper.

Dated: August 23 2010

LAW OFFICE OF ERIC A. WOOSLEY

By: _____
ERIC A. WOOSLEY
JORDAN T. PORTER
Attorneys for Plaintiffs PAUL RICE and JOSEPH RICE

## PROOF OF SERVICE BY MAIL

### Rice v. Moody's Investors, et al

### United States District Court – Case No. SACV 10-00398CJC

STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

I am employed in the County of Santa Barbara, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 1602 State Street, Santa Barbara, California.

On August 24, 2010, I served the foregoing document described as **SECOND AMENDED COMPLAINT FOR: 1. NEGLIGENCE AGAINST ALL DEFENDANTS 2. NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS 3. INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

### SEE ATTACHED SERVICE LIST

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with United States postal service on that same day with postage thereon fully prepaid at Santa Barbara, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 24, 2010, at Santa Barbara, California.

PEGGY GEARHART

**SERVICE LIST**

1
2  David T. Biderman, Esq.
   PERKINS COIE LLP
3  1888 Century Park East, Suite 1700
   Los Angeles, CA 90067
4
   Floyd Abrams, Esq.
5  CAHILL, GORDON & REINDEL LLP
   80 Pine Street
6  New York, New York 10005

7  Frank A. Silane, Esq.
   Scott D. Cunningham, Esq.
8  CONDON & FORSYTH LLP
   1901 Avenue of the Stars, Suite 850
9  Los Angeles, CA 90067

10 James J. Coster, Esq.
   Joshua M. Rubins, Esq.
11 SATTERLEE STEPHENS BURKE & BURKE LLP
   230 Park Avenue, 11th Floor
12 New York, New York 10169

13 Lowell Haky, Esq.
   Vice-President & Associate General Counsel
14 CHARLES SCHWAB & CO., INC.
   101 Montgomery Street
15 San Francisco, CA 94104

16
17
18
19
20
21
22
23
24
25
26
27
28