LAW OFFICE OF ERIC A. WOOSLEY
1602 State Street
Santa Barbara, CA  93101
(805) 897-1830 FAX: (805) 897-1834

Eric A. Woosley (State Bar No. 211962)
Jordan T. Porter (State Bar No. 250112)

Attorneys for Plaintiffs PAUL RICE and JOSEPH RICE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PAUL RICE and JOSEPH RICE | CASE NO. SACV10-398 CJC (MLGx) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO THE RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| CHARLES SCHWAB; MOODY'S INVESTORS SERVICE; STANDARD & POOR's; DOES 1 through 50, inclusive, | |
| Defendants. | |

///
///
///
///
///
///
///

## **TABLE OF CONTENTS**

Table of Authorities  . . . . . . . . . . . . . . . . . .  i

I.   INTRODUCTION/FACTUAL SUMMARY  . . . . . . . . .  1

II.  ARGUMENT AND AUTHORITIES  . . . . . . . . . . .  4

     A.   Standards Governing Rule 12(b)(6) Motions  . . .  4

          1.  Plaintiffs' Objections to the Declarations
          of Joshua M. Rubins and David T. Biderman Offered
          in Support of Defendants Motion to Dismiss . . .  4

     B.   California Law Applies in this Diversity Case  .  5

     C.   Defendants Owed Plaintiffs A Duty of Care Under
          California Law . . . . . . . . . . . . . . . .  5

     D.   Contrary to Defendants' Argument Even A New
          York District Court Has Twice Determined That
          The Rating Agencies May Be Held Liable for
          Negligent And Intentional Misrepresentation for
          the False Ratings They Published . . . . . . . .  9

     E.   Plaintiffs Have Sufficiently Alleged The Elements
          Necessary to State a Cause of Action for
          Intentional Misrepresentation  . . . . . . . .  11

     F.   Plaintiffs Have Sufficiently Alleged The
          Elements Necessary to State a Cause of Action for
          Intentional Misrepresentation  . . . . . . . .  14

     G.   The Credit Rating Agency Reform Act of 2006
          Does Not Preempt Plaintiffs' Negligence and
          Negligent Misrepresentation Claims . . . . . .  16

     H.   Plaintiffs' Negligence and Negligent
          Misrepresentation Claims Are Not Barred
          by the First Amendment to the United
          States Constitution  . . . . . . . . . . . . .  17

     I.   Plaintiffs Have Alleged Actual Malice  . . . .  18

     J.   If this Court Believes That the Plaintiffs Have
          Not Adequately Stated Facts Constituting the
          Challenged Causes of Action it Should Grant
          Plaintiffs Leave to Amend Their Complaint  . .  19

III. CONCLUSION  . . . . . . . . . . . . . . . . . .  20

1                             **Table of Authorities**

2    **Cases**:

3    *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co. Inc.*
         651 F.Supp.2d 155 (2009) . . . . . . . . . . . . . 9, 15, 17
4
     *Apollo Capital Fund, LLC* v. *Roth Capital Partners, LLC,*
5        158 Cal.App.4th 226 (2007) . . . . . . . . . . . . . . 12

6    *Arpin* v. *Santa Clara Valley Transp. Agency,* 261 F. 3d 912
         (9th Cir. 2001) . . . . . . . . . . . . . . . . . . 4
7
     *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370
8        (1992) . . . . . . . . . . . . . . . . . . . . . . 6

9    *Butler* v. *Los Angeles County,* 617 F. Supp. 2d 994
         (CD CA 2008) . . . . . . . . . . . . . . . . . . . 4
10
     *California Public Employees' Retirement System* v. *Moody's*
11       *Corp. et al.* (Cal.Super.Ct. April 30, 2010) . . . . . . 16

12   *Cohen* v. *S & S Construction Company*, 151 Cal. App. 3d 941
         (1983) . . . . . . . . . . . . . . . . . . . . . . 6
13
     *Cont'l Airlines, Inc.* v. *McDonnell Douglas Corp.,*
14       216 Cal. App. 3d 388, 409 (1989) . . . . . . . . . . 11

15   *Fox* v. *Pollack*, 181 Cal. App. 3d 954, 962
         (1986) . . . . . . . . . . . . . . . . . . . . . . 11
16
     *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64
17       (1938) . . . . . . . . . . . . . . . . . . . . . . 5

18   *Gagne* v. *Bertran*, 43 Cal.2d 481
         (1954) . . . . . . . . . . . . . . . . . . . . . . 5, 6
19
     *In re Lehman Bros. Securities and ERISA Litigation,*
20       684 F.Supp.2d 485 (2010) . . . . . . . . . . . . . . 12

21   *In re Merrill Lynch & Co.*, 273 F.Supp. 2d 351
         (2003) . . . . . . . . . . . . . . . . . . . . . . 15
22
     *In re National Century Financial Enterprises, Inc.,*
23       *Inv. Litigation* 580 F.Supp.2d 630, 651 (S.D.Ohio,2008) . 16

24   *In re Wells Fargo Mortgage-Backed Certificates Litigation,*
         2010 WL 1661534, 12 (N.D.Cal.2010) . . . . . . . . . . 8
25
     *Kings County, Washington* v. *IKB Deutsche Industriebank AG,*
26       2010 WL 1702196 . . . . . . . . . . . . . . . . . 9, 10

27

28

*Lormand v. US Unwired, Inc.*, 565 F. 3d 228
      (5th Cir. 2009)[Rule 12(b)(6)  . . . . . . . . . 4

*Paulsen v. CNF, Inc.*, 391  F.Supp. 2d 804
      (ND CA 2005) . . . . . . . . . . . . . . . . . . 4

**Statutes:**

California Civil Code Section 1711  . . . . . . . . . . . . 6

Code of Civil Procedure Section 426.16  . . . . . . . . . 18

Code of Civil Procedure Section 426.17  . . . . . . . . . 18

Code of Civil Procedure §3294  . . . . . . . . . . . . . 19

Federal Rules of Civil Procedure, Rule 15 . . . . . . . . . 16

28 USC § 1652 . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 78o-7 . . . . . . . . . . . . . . . . . . . . 16

**Secondary Source:**

4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts,
      §§ 480-82  . . . . . . . . . . . . . . . . . . . . 11

# I. INTRODUCTION/FACTUAL SUMMARY

Defendants make the same arguments as they did in their last Motion[1] and attempt to ignore the fact that the Plaintiffs corrected the only pleading deficiencies identified by the Court in its August 4, 2010 ruling.  Specifically, the Court noted that:

"Plaintiffs have not alleged their claim for negligent misrepresentation and intentional misrepresentation with sufficient particularity.  It is unclear whether plaintiffs contend that the false statements of the ratings, the other statements mentioned in Paragraph 29, or both.  Nor is it clear which defendants made which of these particular statements and why they are false.  Plaintiffs have failed to meet Rule 9(b)'s heightened pleading standard."

Contrary to Defendants' argument, Plaintiffs directly and specifically addressed these pleading issues as follows:

<u>Paragraph 29[2] sets forth the representations, when they were made, and by whom they where made:</u>

The Defendants made the following representations to the Plaintiffs:

A.  On or about January 23, 2008, Defendant Moody's Investor Services represented to Plaintiffs that Fannie Mae with a dividend rate of 8.25 percent rated AA.

B.  On or about January 23, 2008, Defendant Standard & Poor's

---

[1]  Including the erroneous claim that somehow New York law applies.

[2]  These allegations are also set forth in Plaintiffs' cause of action for Intentional Misrepresentation.  See Second Amended Complaint Paragraphs 37-39.

1

1   represented to Plaintiffs that Fannie Mae with a dividend rate of

2   8.25 percent rated AA3.

3       C.  On or about February 13, 2008, Defendant Moody's Investor

4   Services represented to Plaintiffs Fannie Mae preferred shares at

5   8.25 percent dividend were still rated AA.

6       D.  On or about February 13, 2008, Defendant Standard & Poor's

7   represented to Plaintiffs Fannie Mae preferred shares at 8.25

8   percent dividend were still rated AA3.

9       E.   On or about May 6, 2008, Defendant Moody's Investor

10  Services represented to Plaintiffs Fannie Mae preferred shares at

11  8.25 percent dividend were still rated AA.

12      F.   On or about May 6, 2008, Defendant Standard & Poor's

13  represented to Plaintiffs Fannie Mae preferred shares at 8.25

14  percent dividend were still rated AA3.

15      Paragraph 30 sets forth the information being conveyed by the

16  ratings:

17      The ratings of AA and AA3 were designed by the Defendants to,

18  and in fact did, communicate factual information to the Plaintiffs

19  that Fannie Mae and Freddie Mac preferred stock were: 1) nearly

20  risk free; 2) were as safe, secure and reliable as high quality

21  corporate or government bonds; 3) had an extremely low probability

22  of transitioning to junks status; 4) had a high likelihood of

23  recovery in the rare event of default; 5) had been rated by

24  objective, independent third parties whose impartiality was not

25  impaired by significant conflicts of interest; and 6) had been

26  rated on the basis of current, accurate and complete data and

27

28

2

1   analysis using reasonable and true models and assumptions. In fact

2   both the ratings and the factual information conveyed by those

3   ratings were false.

4   <u>And, Paragraph 31 sets forth Plaintiffs' allegation that both</u>

5   <u>the ratings and the information conveyed by those ratings, were</u>

6   <u>false[3]:</u>

7        Plaintiffs are informed and believe, and thereon allege, that

8   Defendants knew the ratings (and information conveyed by those

9   ratings) were false because the models, data and assumptions used to

10  rate Fannie Mae and Freddie Mac were unreasonable, false, and based

11  on pure speculation.  In or around 2004, in order to compete with

12  rival credit rating agencies, the Defendants eased their credit-

13  rating methods, used inaccurate and stale information to rate Fannie

14  Mae's and Freddie Mac's assets and failed to monitor those assets

15  after preferred stock was sold to investors.  Further, Plaintiffs

16  are informed and believe and thereon allege that Defendants Moody's

17  and Standard & Poor's, had knowledge that Fannie Mae and Freddie

18  Mac were in financial trouble and were bad risks as far back as

19  2007.  Despite such knowledge, Moody's and Standard & Poor's

20  published the ratings and buy recommendations, which were

21  misleading and omitted material facts known to Defendants that, had

22  they been known to Plaintiffs, would have materially affected

23  Plaintiffs' decision with regard to the purchase of the subject

24  securities.

25  _____

26      [3]   Plaintiffs also set forth the factual basis for their
    allegation that the Defendants knew the representations being made
27  by them were false.

28                              3

1   These changes satisfy the pleading requirements under Rule
2   9(b).

3                **II.   ARGUMENT AND AUTHORITIES**

4   **A.   Standards Governing Rule 12(b)(6) Motions.**

5   Traditionally, Courts have viewed with "disfavor" motions to
6   dismiss under Rule 12(b)(6) because of the lesser role pleadings
7   play in federal practice and the liberal policy re amendment.
8   *Lormand v. US Unwired, Inc.,* 565 F. 3d 228, 232 (5th Cir.
9   2009)[Rule 12(b)(6) motions "viewed with disfavor and rarely
10  granted."]

11          **1.   Plaintiffs' Objections to the Declarations of Joshua**
12  **M. Rubins and David T. Biderman Offered in Support of Defendants**
13  **Motion to Dismiss.**

14  Unless the court converts the Rule 12(b)(6) motion into a
15  summary judgment motion, or the defense is apparent from matters of
16  which a court may take judicial notice, the court cannot consider
17  material outside the complaint (e.g., facts presented in briefs,
18  affidavits or discovery materials). *Arpin v. Santa Clara Valley*
19  *Transp. Agency,* 261 F. 3d 912, 925 (9th Cir. 2001); *Butler v. Los*
20  *Angeles County,* 617 F. Supp. 2d 994, 999 (CD CA 2008) (citing
21  text); *Paulsen v. CNF, Inc.,* 391  F.Supp. 2d 804, 807 (ND CA
22  2005)(citing text).

23  In this case, Defendants improperly attempt to offer documents
24  generated by Moody's and Standard and Poor's not attached to the
25  First Amended Complaint, not referenced in the First Amended
26  Complaint and not judicially noticeable.

27
28                                    4

1  Accordingly, the Declarations of Joshua M. Rubins and David T.

2 Biderman and their accompanying exhibits should not be considered

3 when ruling on Defendants' Motion.

4  **B. California Law Applies in this Diversity Case**

5  Again, (without explanation) Defendants seek to have this

6 Court apply New York law in this diversity action.  There is simply

7 no justification for doing so.

8 This case was removed from a California State Court (Orange

9 County) to Federal Court by the Defendants based on Diversity of

10 Citizenship.  (Notice of Removal of Defendants Standard & Poor's

11 and Moody's.)

12  Accordingly, other than with regard to the preemption issue

13 and first amendment defense asserted by the Defendants, California

14 law applies in this case.  The Erie doctrine requires federal

15 courts in diversity actions to apply state law as the "rule of

16 decision." See, 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*,

17 304 U.S. 64, 78, (1938).

18  **C. Defendants Owed Plaintiffs A Duty of Care Under California**

19 **Law**

20  Under certain circumstances, expressions of professional

21 opinion are treated as representations of fact. When a statement,

22 although in the form of an opinion, is "not a casual expression of

23 belief" but "a deliberate affirmation of the matters stated," it

24 may be regarded as a positive assertion of fact. *Gagne v. Bertran*,

25 43 Cal.2d 481, 489 (1954).  Moreover, when a party possesses or

26 holds itself out as possessing superior knowledge or special

27

28

5

information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the Defendant's representation may be treated as one of material fact. *Gagne v. Bertran, supra*, 43 Cal. 2d at p. 489; *Cohen v. S & S Construction Company*, 151 Cal. App. 3d 941, 946, (1983). There can be no question that the Defendants held themselves out as having "possessing superior knowledge or special information or expertise regarding the subject matter." Likewise, Defendants, in ostensibly applying sophisticated analysis to companies and securities so that they can rate their risk, can hardly be considered "a casual expression of belief" but is rather "a deliberate affirmation of the matters stated."

Additionally, Defendants' reliance on *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992), is misplaced. In *Bily* the California Supreme Court adopted the Restatement approach and found that liability attaches to the class of persons to whom the representation was intended. *Id.* at 414.

This rule of law is consistent with California Civil Code section 1711 which provides that:

"One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually mislead by the deceit." *Id.*

In this case, Plaintiffs are part of the class (investors) that rely on the Defendants' ratings to make investment decisions.

6

1    As plead in Plaintiffs' First Second Complaint:

2        "Defendants specifically intended that the Plaintiffs would

3    rely on their credit ratings, and further represent that "credit

4    ratings and research help investors analyze the credit risks

5    associated with fixed-income securities. Such independent credit

6    ratings and research also contribute to efficiencies in fixed-

7    income markets and other obligations, such as insurance policies

8    and derivative transactions, by providing credible and independent

9    assessments of credit risk," and that "credit ratings have achieved

10   wide investor acceptance as convenient tools for differentiating

11   credit quality."  (SAC; ¶23.)

12       Moreover, a point ignored by the Defendants, is that this

13   issue was already addressed by a California District Court, who

14   concluded that rating misstatements made by Moody's and Standard &

15   Poors are actionable by investors[4]:

16       The third and final category of misstatements identified
         in the complaint concerns the high investment rating
17       awarded to each of the Certificates. According to
         plaintiffs, the Prospectus Supplements made the following
18       disclosures regarding the rating process of defendant
         Moody's:
19

20       The ratings of Moody's on mortgage pass-through
         certificates address the likelihood of the receipt by
21       certificateholders of all distributions of principal and
         interest to which such certificateholders are entitled.
22       Moody's rating opinions address the structural, legal and
         issuer aspects associated with the certificates,
23       including the nature of the underlying mortgage loans and
         the credit quality of the credit support provider, if any.

24

25   ─────────────────

26       [4]   The rating agencies were dismissed from this case on other grounds,
     namely that causes of action against Moodys and Standard and Poors were
27   predicated on them being underwriters under Federal Securities Laws rather than
     state law claims.

28                                      7

Complaint ¶ 111. The disclosures regarding the practices of the other rating agencies were nearly identical. Id. Plaintiffs allege that contrary to the statements in the Prospectus Supplements, however, "The assigned ratings were not the result of the Ratings Agencies' independent analysis and conclusion," but rather were predetermined by Wells Fargo. Id. ¶ 112. Plaintiffs allege that the "AAA" ratings assigned to the Certificates were "unjustifiably high and did not represent the true risk of the Certificates" because they were "based on insufficient information and faulty assumptions concerning how many underlying mortgages were likely to default." Id. ¶ 115.

In support of their allegation that the Offering Documents' statements regarding the rating process constitute actionable misstatements, plaintiffs point to certain external evidence, including an SEC Summary Report stating that rating agencies had failed to disclose relevant rating criteria, implement written procedures for rating mortgage-backed securities, document specific steps in the rating process, implement procedures for identifying errors in ratings or assessing compliance with rating standards, or document rating agency decisions. Id. ¶ 117. Plaintiffs also quote statements by executives of defendants Moody's and Standard & Poor's in which the executives admitted that they were aware at the time the subject ratings were made that the agencies' rating models were outdated. Id. ¶¶ 122-24. See id. ¶ 122-23 (S & P's Managing Director stated that S & P developed but failed to implement a more thorough ratings process as early as 2004, and that "had these models been implemented [the rating agencies] would have had an earlier warning about the performance of many of the new products that subsequently lead to such substantial losses"); ¶ 124 (Moody's Managing Director stated "that the rating agencies 'did not update their models or their thinking' during the period of deterioration in credit standards"). In the Court's view, these allegations, particularly the statements from Moody's and S & P's executives, are sufficient to establish an actionable misstatement with respect to the rating process.

*In re Wells Fargo Mortgage-Backed Certificates Litigation*, 2010 WL 1661534, 12 (N.D.Cal.2010)

Accordingly, Defendants' Motion to Dismiss on this ground must be denied.

8

**D.   Contrary to Defendants' Argument Even A New York District Court Has Twice Determined That The Rating Agencies May Be Held Liable for Negligent And Intentional Misrepresentation for the False Ratings They Published.**

In two recent cases, *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co. Inc.* 651 F.Supp.2d 155 (2009) and *Kings County, Washington* v. *IKB Deutsche Industriebank AG*, 2010 WL 1702196, Judge Shira A. Scheindlin upheld common law fraud claims against S&P and Moody's for assigning allegedly false and misleading high ratings to certain structured finance products.

In *Abu Dhabi*, Judge Scheindlin also rejected the rating agencies' argument that the ratings were nonactionable opinions, holding that plaintiffs had sufficiently pled that the rating agencies did not genuinely or reasonably believe that "the ratings they assigned to the Rated Notes were accurate and had a basis in fact."   (*Id.* 176.)

Most importantly, the court held that plaintiffs had sufficiently pleaded facts from which one could infer that the rating agencies (1) knew that the credit ratings were false and (2) had the motive and opportunity to communicate to potential investors the allegedly false and misleading ratings. The court relied on, among other things, electronic communications between S&P analysts indicating that they knew that the rating process was unreliable. (*Id.* 178.)   The court further relied on the alleged fact that the rating agencies possessed nonpublic information that contradicted the assignment of high ratings to the notes.   (*Ibid.*)

9

1    These allegations equate to Paragraph 31 of Plaintiffs's
2  Second Amended Complaint wherein they allege:

3    "Plaintiffs are informed and believe, and thereon allege, that
4  Defendants knew the ratings (and information conveyed by those
5  ratings) were false because the models, data and assumptions used to
6  rate Fannie Mae and Freddie Mac were unreasonable, false, and based
7  on pure speculation.  In or around 2004, in order to compete with
8  rival credit rating agencies, the Defendants eased their credit-
9  rating methods, used inaccurate and stale information to rate Fannie
10 Mae's and Freddie Mac's assets and failed to monitor those assets
11 after preferred stock was sold to investors.  Further, Plaintiffs
12 are informed and believe and thereon allege that Defendants Moody's
13 and Standard & Poor's, had knowledge that Fannie Mae and Freddie
14 Mac were in financial trouble and were bad risks as far back as
15 2007. Despite such knowledge, Moody's and Standard & Poor's
16 published the ratings and buy recommendations, which were
17 misleading and omitted material facts known to Defendants that, had
18 they been known to Plaintiffs, would have materially affected
19 Plaintiffs' decision with regard to the purchase of the subject
20 securities."

21    In the other case before Judge Scheindlin, *Kings County,*
22 *Washington v. IKB Deutsche Industriebank AG*, the Court denied a
23 motion to dismiss, holding that plaintiffs had adequately pleaded
24 scienter for the reasons set forth in Abu Dhabi and that plaintiffs
25 had "plausibly alleged that the materialization of the risk
26 concealed by the [AAA ratings] caused plaintiffs' losses." (*Id.* at
27

28                                    10

3.)

**E. Plaintiffs Have Sufficiently Alleged The Elements Necessary to State a Cause of Action for Negligent Misrepresentation**

Under California law, the elements of a claim for negligent misrepresentation are: (1) the Defendant made a misrepresentation as to a past or existing material fact; (2) the representation was untrue; (3) the Defendant, regardless of his actual belief, made the representation without reasonable grounds for believing it to be true; (4) Defendant intended to induce plaintiff to rely on the fact misrepresented; (5) plaintiff was unaware of the falsity of the representations and acted in justifiable reliance thereon, and (6) plaintiff sustained damages as a result of his reliance. *Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 409 (1989); *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986) (citing 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 480-82).

Plaintiffs have plead all of these elements.

First, Defendants claim that Plaintiffs have not plead a knowing misstatement. This is simply not true. Plaintiffs have alleged that:

"Plaintiffs are informed and believe, and thereon allege, that Defendants knew the ratings (and information conveyed by those ratings) were false because the models, data and assumptions used to rate Fannie Mae and Freddie Mac were unreasonable, false, and based on pure speculation. In or around 2004, in order to compete with

11

rival credit rating agencies, the Defendants eased their credit-rating methods, used inaccurate and stale information to rate Fannie Mae's and Freddie Mac's assets and failed to monitor those assets after preferred stock was sold to investors.  Further, Plaintiffs are informed and believe and thereon allege that Defendants Moody's and Standard & Poor's, had knowledge that Fannie Mae and Freddie Mac were in financial trouble and were bad risks as far back as 2007. Despite such knowledge, Moody's and Standard & Poor's published the ratings and buy recommendations, which were misleading and omitted material facts known to Defendants that, had they been known to Plaintiffs, would have materially affected Plaintiffs' decision with regard to the purchase of the subject securities."  (FAC; ¶31.)

Moreover, as required by *Apollo Capital Fund, LLC* v. *Roth Capital Partners, LLC,* 158 Cal.App.4th 226 (2007) and *In re Lehman Bros. Securities and ERISA Litigation*, 684 F.Supp.2d 485 (2010), the Plaintiffs have specifically plead the particulars as to why the Defendants did not truly hold the opinion ratings they expressed at the time they were made:

1.  The models, data and assumptions used to rate Fannie Mae and Freddie Mac were unreasonable, false, and based on pure speculation;

2.  In or around 2004, in order to compete with rival credit rating agencies, the Defendants eased their credit-rating methods, used inaccurate and stale information to rate Fannie Mae's and Freddie Mac's assets and failed to monitor those assets after

12

1  preferred stock was sold to investors; and

2      3. Defendants Moody's and Standard & Poor's, had knowledge

3  that Fannie Mae and Freddie Mac were in financial trouble and were

4  bad risks as far back as 2007.

5      Moreover, as to Defendants claim that Plaintiffs have failed

6  to identify[5] the misleading and omitted facts, that too is belied

7  by Plaintiffs' Second Amended Complaint:

8      "The ratings of AA and AA3 were designed by the Defendants to,

9  and in fact did, communicate factual information to the Plaintiffs

10  that Fannie Mae and Freddie Mac preferred stock were: 1) nearly

11  risk free; 2) were as safe, secure and reliable as high quality

12  corporate or government bonds; 3) had an extremely low probability

13  of transitioning to junks status; 4) had a high likelihood of

14  recovery in the rare event of default; 5) had been rated by

15  objective, independent third parties whose impartiality was not

16  impaired by significant conflicts of interest; and 6) had been

17  rated on the basis of current, accurate and complete data and

18  analysis using reasonable and true models and assumptions.  In fact

19  both the ratings and the factual information conveyed by those

20  ratings were false."  (SAC; ¶31.)

21      Additionally, Defendants argue that the "SAC is also still

22  devoid of any requisite allegation that S & P and Moody's knew

23  these particular Plaintiffs would use their ratings...for any

24  particular purpose."  (Defendants' Motion; Page 13, lines 4-6.)

25  ───────────────

26      [5]  As to Defendants' repeated assertion that "these exact
allegations failed previously..." it is only necessary to look at
27  the Court's order and see that no such ruling was made.

28

1    This argument likewise has no basis in fact.  Plaintiffs have

2    alleged that:

3        "Defendants specifically intended that the Plaintiffs would

4    rely on their credit ratings, and further represent that "credit

5    ratings and research help investors analyze the credit risks

6    associated with fixed-income securities. Such independent credit

7    ratings and research also contribute to efficiencies in fixed-

8    income markets and other obligations, such as insurance policies

9    and derivative transactions, by providing credible and independent

10   assessments of credit risk," and that "credit ratings have achieved

11   wide investor acceptance as convenient tools for differentiating

12   credit quality."  (SAC; ¶23.)

13       Accordingly, Plaintiffs have stated a cause of action for

14   Negligent Misrepresentation against the Defendants.

15       **F.    Plaintiffs Have Sufficiently Alleged The Elements**

16   **Necessary to State a Cause of Action for Intentional**

17   **Misrepresentation.**

18       Defendants repeat their same arguments set forth *supra* with

19   regard to Plaintiffs' cause of action for Intentional

20   Misrepresentation.

21       Defendants again allege that "Plaintiffs do not allege any

22   knowingly false statements..." (Defendants' Motion; Page 14, lines

23   17-18.)

24       Plaintiffs direct the Court (and the Defendants to Paragraph

25   39 of the Second Amended Complaint.  Moreover, the date and content

26   of each misrepresentation is set forth in Paragraphs 37 A-F and

27

28                                    14

1   38.)

2       Moreover, consistent with *In re Merrill Lynch & Co.*, 273

3   F.Supp. 2d 351 (2003) Plaintiffs have alleged that for "each and

4   every rating challenged," that "Defendants knew the ratings (and

5   information conveyed by those ratings) were false because the

6   models, data and assumptions used to rate Fannie Mae and Freddie

7   Mac were unreasonable, false, and based on pure speculation.  In or

8   around 2004, in order to compete with rival credit rating agencies,

9   the Defendants eased their credit-rating methods, used inaccurate

10  and stale information to rate Fannie Mae's and Freddie Mac's assets

11  and failed to monitor those assets after preferred stock was sold

12  to investors.  Further, Plaintiffs are informed and believe and

13  thereon allege that Defendants Moody's and Standard & Poor's, had

14  knowledge that Fannie Mae and Freddie Mac were in financial trouble

15  and were bad risks as far back as 2007."  (SAC; ¶39.)

16      As to the Defendants' argument that Plaintiffs can *never*

17  satisfy the requirement of reasonable reliance because of the

18  disclaimers they include in their published reports, this argument

19  has already been resoundingly rejected:

20      "{T}he disclaimers in the Information Memoranda that '[a]

21  credit rating represents a Rating Agency's opinion regarding credit

22  quality and is not a guarantee of performance or a recommendation

23  to buy, sell or hold any securities,' are unavailing and

24  insufficient to protect the Rating Agencies from liability for

25  promulgating misleading ratings."   *Abu Dhabi Commercial Bank* v.

26  *Morgan Stanley & Co. Inc.* 651 F.Supp.2d 155, 176 (2009).

27

28                                  15

1    Accordingly, for the same reasons set forth in Section E
2  *supra*, the Plaintiffs have stated a cause of action against the
3  Rating Agencies for Intentional Misrepresentation.

4    **G.   The Credit Rating Agency Reform Act of 2006 Does Not**
5  **Preempt Plaintiffs' Negligence and Negligent Misrepresentation**
6  **Claims[6]**

7    Defendants have not met their burden of showing that the
8  Federal Credit Rating Agency Reform Act ("CRARA"), 15 U. S. C.
9  § 78o-7, was intended to preempt this lawsuit, and no Court, State
10  or Federal, has issued has published an opinion supporting
11  Defendants' preemption position.

12    In rejecting Moody's argument Judge James Grahm held:

13    "[T]he Court is not prepared to hold that the Credit Rating
14  Agency Reform Act preempts the application of state blue sky laws
15  to credit rating agencies who have registered as NRSROs. The
16  presumption is that Congress does not intend to preempt state law."
17  *In re National Century Financial Enterprises, Inc., Inv. Litigation*
18  580 F.Supp.2d 630, 651 (S.D.Ohio,2008).

19    Just as importantly, the statutory title of CRARA sets forth
20  its limited purpose:   "Registration of nationally recognized
21  statistical rating organizations." 15. U. S. C. § 78o-7.  The goal
22  of CRARA is to avoid states setting conflicting standards regarding
23  how ratings should be conducted.  A claim for negligence under
24  state law does not intrude, in any way, on Congress' ability to set

25  ───────────────────
26    [6]   Notably this, as well as Defendants other arguments has already been
   raised and rejected in *California Public Employees' Retirement System* v. *Moody's*
27  *Corp. et al.*  (Cal.Super.Ct. April 30, 2010).  The Defendants challenge to the
   Trial Court's ruling was summarily denied on June 28 , 2010.

28                                      16

standards for the rating agencies.  The statute does not state that ratings that fall within the parameters of the federal law, if violative of state law, are not actionable.  Defendants argue that CRARA offers complete immunity to the Rating Agencies from any state activity that could impose ratings-related liability.  If that were true, the Rating Agencies would be immune from liability for actions between both ends of the spectrum – those constituting pure negligence (such as incorrectly transcribing ratings) and those arising out of intentional torts (such as deceit).  Neither of these scenarios intrudes on the ability of Congress to regulate the Rating Agencies.

**H.   Plaintiffs' Negligence and Negligent Misrepresentation Claims Are Not Barred by the First Amendment to the United States Constitution**

The right to free speech allows opinions on things of public concern.  The issuance of these securities ratings is not, however, an issue of public concern.  Rather, it is an economic activity designed for a limited target for the purpose of making money. This is not something that should be afforded First Amendment protection and the Defendants are not akin to members of the financial press.  In *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 182 (S.D.N.Y. 2009), Judge Scheindlin correctly concluded that where a credit rating is not directed to the public at large but "provided instead in connection with a private placement to a select group of investors," that rating is not a matter of public concern.  *Id.* at 175-176.  That is

17

the case here where Plaintiffs were provided specific rating
information within regards to the specific investments they were
considering.

It is well-established that under typical circumstances, the
First Amendment protects rating agencies, subject to an
"actual malice" exception, from liability arising out of their
issuance of ratings and reports because their ratings are
considered matters of public concern. ***However, where a rating
agency has disseminated their ratings to a select group of
investors rather than to the public at large, the rating
agency is not afforded the same protection.***

*Id.* at 175-176.(Emphasis added.)

This distinction is also seen in California's Anti-SLAPP
statute, Code of Civil Procedure, Section 426.16 and 426.17, a
statute that is also designed to encourage public discourse.  The
anti-SLAPP statute was amended with Section 426.17 to differentiate
between matters of public concern, which remain protected, and
matters designed to sell something.

**I.  Plaintiffs Have Alleged Actual Malice**

While Plaintiffs dispute, as set forth above, that actual
malice applies to the statements made by the Defendants to the
group of investors that included the Plaintiffs, the fact remains
that Plaintiffs have plead actual malice:

"Plaintiffs are informed and believe, and thereon allege, that
Defendants' conduct as described herein was intended by Defendants to
cause injury, or was undertaken with the knowledge that injury and

18

damages to Plaintiffs was probable and likely, such that the conduct was despicable and carried on by Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights, and were intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intent to deprive Plaintiffs of property, legal rights, or to otherwise cause them injury, so as to constitute malice, oppression, and/or fraud under California Civil Code §3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants."  (SAC; ¶44.)

**J.    If this Court Believes That the Plaintiffs Have Not Adequately Stated Facts Constituting the Challenged Causes of Action it Should Grant Plaintiffs Leave to Amend Their Complaint**

Federal Rules of Civil Procedure, rule 15 expressly states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15; *Allen v. City of Beverly Hills*, 911 F. 2d 367, 373 (9th Cir. 1990). "Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one more chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F. 2d 1108, 1112 (11th Cir. 1991). Accordingly, if this Court is inclined to sustain the Defendants' rule 12(b)(6) motion, Plaintiffs should be permitted to amend their Complaint to state facts that clearly show that they are entitled to relief.

19

1

### III.   CONCLUSION

2          Based on the foregoing, Plaintiffs respectfully request the

3     Court deny Defendants' Motion in its entirety.

4

5     Dated:     October 9 , 2010          LAW OFFICE OF ERIC A. WOOSLEY

6

7                                     By:  _____

8                                          ERIC A. WOOSLEY
                                           JORDAN T. PORTER
                                           Attorneys for Plaintiffs PAUL
9                                          RICE and JOSEPH RICE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      20

## PROOF OF SERVICE BY MAIL

### Rice v. Moody's Investors, et al

### United States District Court - Case No. SACV 10-00398CJC

STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

I am employed in the County of Santa Barbara, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 1602 State Street, Santa Barbara, California.

On October 4, 2010, I served the foregoing document described as **PLAINTIFFS' OPPOSITION TO THE RATING AGENCIES' SECOND AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

### SEE ATTACHED SERVICE LIST

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with United States postal service on that same day with postage thereon fully prepaid at Santa Barbara, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 4 , 2010, at Santa Barbara, California.


PEGGY GEARHART

1

## SERVICE LIST

2   David T. Biderman, Esq.
    PERKINS COIE LLP
3   1888 Century Park East, Suite 1700
    Los Angeles, CA 90067

4

    Floyd Abrams, Esq.
5   CAHILL, GORDON & REINDEL LLP
    80 Pine Street
6   New York, New York 10005

7   Frank A. Silane, Esq.
    Scott D. Cunningham, Esq.
8   CONDON & FORSYTH LLP
    1901 Avenue of the Stars, Suite 850
9   Los Angeles, CA 90067

10  James J. Coster, Esq.
    Joshua M. Rubins, Esq.
11  SATTERLEE STEPHENS BURKE & BURKE LLP
    230 Park Avenue, 11th Floor
12  New York, New York 10169

13  Lowell Haky, Esq.
    Vice-President & Associate General Counsel
14  CHARLES SCHWAB & CO., INC.
    101 Montgomery Street
15  San Francisco, CA 94104

16

17

18

19

20

21

22

23

24

25

26

27

28