David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Judith B. Gitterman, Bar No. 115661
JGitterman@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Floyd Abrams
fabrams@cahill.com
Brian T. Markley
bmarkley@cahill.com
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Telephone: 212.701.3000
Facsimile: 212.269.5420
(Admitted Pro Hac Vice)

Attorneys for Standard & Poor's Financial Services
LLC, incorrectly sued as Standard & Poor's

*- Additional Counsel Listed on Signature Page -*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PAUL RICE and JOSEPH RICE, | Case No. SACV 10-00398 CJC (MLGx) |
| Plaintiffs, | **DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| CHARLES SCHWAB; MOODY'S INVESTORS SERVICE; STANDARD & POOR's, DOES 1 through 50, Inclusive, | |
| Defendants. | Date: October 25, 2010 |
| | Time: 1:30 p.m. |
| | Place: Courtroom 9(B) |
| | Hon. Cormac J. Carney |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................1

II.  ARGUMENT.......................................................................................2

    A.   THE CRAS DID NOT OWE PLAINTIFFS A DUTY OF CARE
       UNDER EITHER NEW YORK OR CALIFORNIA LAW .................2

    B.   PLAINTIFFS FAIL TO ALLEGE ANY OF THE OTHER
       ELEMENTS REQUIRED TO STATE A CLAIM FOR
       NEGLIGENT MISREPRESENTATION OR FRAUD........................5

    C.   THE CREDIT RATING AGENCY REFORM ACT OF 2006
       PREEMPTS PLAINTIFFS' NEGLIGENCE-BASED CLAIMS.......12

    D.   PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ARE ALSO
       BARRED BY FUNDAMENTAL CONSTITUTIONAL
       PRINCIPLES ................................................................................14

    E.   LEAVE TO AMEND THE FIRST AMENDED COMPLAINT
       SHOULD BE DENIED BECAUSE SUCH LEAVE WOULD
       BE FUTILE ...................................................................................17

III. CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*,
651 F. Supp. 2d 155 (S.D.N.Y. 2009) ........................................................7-8, 14-15

*In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989).................................10

*Barger* v. *Playboy Enterprises, Inc.*, 564 F. Supp. 1151 (N.D. Cal. 1983) .....................17

*Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992) ........................................................3-4

*Burstyn* v. *Joseph Wilson, Inc.*, 343 U.S. 495, 72 S. Ct. 777, 96 L.Ed. 1098 (1952) .....................16

*Clemens* v. *DaimlerChrysler Corp.*, 2006 WL 6022681 (C.D. Cal. 2006) ....................11

*Cohen* v. *S&S Construction Co.*, 151 Cal. App. 3d 941 (4th Dist. 1983)..................4n, 9

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th Cir. 2007)..............7, 14

*Comwest, Inc.* v. *American Operator Services, Inc.*, 765 F. Supp. 1467 (C.D. Cal. 1991)............11

*County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151 (C.D. Cal. 1999) ...................14

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742
(S.D. Tex 2005) ..........................................................................................4, 14, 17

*Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938)......................2n

*Freidus* v. *ING Groep N.V.*, 2010 WL 3554097 (S.D.N.Y. Sep. 14, 2010)....................................8

*Gagne* v. *Bertran*, 43 Cal. 2d 481 (1954) ...................................................................4n, 9

*Ginsburg* v. *Agora, Inc.*, 915 F. Supp. 733 (D. Md. 1995)..............................................5

*Gutter* v. *Dow Jones, Inc.*, 22 Ohio St. 3d 286, 490 N.E.2d 898 (Ohio 1986) ...........4-5

*In re IndyMac Mortgage Backed Securities Litigation*, 2010 WL 2473243 (S.D.N.Y. June
21, 2010).................................................................................................................6

*Jefferson County School District No. R-1* v. *Moody's Investor's Services, Inc.*, 175 F.3d
848 (10th Cir. 1999)................................................................................................14

*King County, Washington* v. *IKB Deutsche Inuds., AG*, 2010 WL 1702196
(S.D.N.Y. Apr. 26, 2010).................................................................................7-8, 7n

*Lee* v. *City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .........................................15n

*In re Lehman Bros. Securities and ERISA Litigation*, 684 F. Supp. 2d 485 (S.D.N.Y.
2010)....................................................................................................................6, 8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Lowe* v. *SEC*, 472 U.S. 181, 105 S. Ct. 2557, 86 L.Ed.2d 130 (1985) ............................16

*In re National Century Financial Enterprises, Inc., Investment Litigation*, 580 F. Supp. 2d 630 (S.D. Ohio 2008).............................................................................................................12

*New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ..............................................................................................6

*New Jersey Carpenters Health Fund* v. *Residential Capital, LLC*, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ..............................................................................................6

*New Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) .............................................................................6

*New York Times* v. *Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964) ......................15

*Paul Rice et al.* v. *Charles Schwab et al.*, No. 10-00398-CJC (C.D. Cal. Aug. 4, 2010)..................2

*Precision Safety Innovations, Inc.* v. *Branson Ultrasonic Corp.*, 2005 WL 5801513 (C.D. Cal. 2005)...............................................................................................................2n

*Rubke* v. *Capitol Bancorp LTD*, 551 F.3d 1156 (9th Cir. 2009)..................................................10

*Shamley* v. *ITT Corp.*, 869 F.2d 167 (2d Cir. 1989) .....................................................................17

*Simpson Strong-Tie Co., Inc.* v. *Gore*, 49 Cal.4th 12 (2010)......................................................16n

*Stancik* v. *CNBC*, 420 F. Supp. 2d 800 (N.D. Ohio 2006) ...............................................................5

*Swartz* v. *KPMG LLP*, 476 F.3d 756 (9th Cir. 2007).................................................................12n

*Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387 (S.D.N.Y. 2010).............................................................................................................6

*Ultramares Corp.* v. *Touche*, 255 N.Y. 170,  174 N.E. 441 (1931) ............................................3-4

*Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083 (1991).....................................................10

*In re Wells Fargo Mortgage-Backed Certificates Litigation*, 2010 WL 1661534 (N.D. Cal. 2010) ...................................................................................................... 9-10

In re Wells Fargo Mortgage-Backed Certificates Litigation, No. 09-CV-01376-LHK, (N.D. Cal. Oct. 5, 2010)..............................................................................................................10

**Statutes**

Credit Agency Reform Act of 2006 ("CRARA") 15 U.S.C. § 78o-7(c)(1)-(2) .................... *passim*

Cal. Civ. Proc. Code § 425.16(a) ................................................................................................16n

Cal. Civ. Proc. Code § 425.17 ....................................................................................................16n

1

# TABLE OF AUTHORITIES
## (continued)

2

3

Page

California Civil Code § 3294 ...........................................................................................17

4

## Federal Rules

5

Federal Rule of Civil Procedure 9(b) ......................................................................... *passim*

6

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1

7

Federal Rule of Evidence 201.....................................................................................15n

8

## Legislation

9

H.R. Rep. No. 109-546, at 14 (2006)............................................................................13

10

## Treatises

11

Restatement (Second) of Torts, Draft No. 11 § 552 at 56 (Apr. 15, 1965) ...................3-4

12

## Law Review Articles

13

14

Timothy M. Sullivan, Note, Federal Preemption and The Rating Agencies:
    Eliminating State Law Liability to Promote Quality Ratings,
    94 Minn. L. Rev. 2136, 2153 (June 2010) .......................................................12-13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendants Standard & Poor's Financial Services, LLC ("S&P") and

2  Moody's Investors Service, Inc. ("Moody's") (collectively, the "CRAs")

3  respectfully submit this joint reply memorandum of law in further support of their

4  joint motion to dismiss, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), the Second

5  Amended Complaint (the "SAC") filed by plaintiffs Paul Rice and Joseph Rice (the

6  "Plaintiffs").

7                               **I.    INTRODUCTION**

8    Plaintiffs do not (and cannot) deny that their SAC contains only *two*

9  substantive changes from their previously dismissed complaint: (i) an assertion that

10  the CRAs' ratings were "directly communicated" by the CRAs to Plaintiffs (¶16),

11  and (ii) a statement of the dates on which Plaintiffs purportedly obtained the

12  respective CRAs' credit ratings and Plaintiffs' location at the time they obtained

13  those ratings. *See* SAC ¶ 29. Tellingly, Plaintiffs barely address these new

14  allegations in their opposition brief. Nor do they even attempt to rebut the

15  arguments in the CRAs' opening brief that the new allegations are immaterial and

16  come nowhere near the threshold for stating a claim.

17    Rather, Plaintiffs spend the bulk of their brief rehashing other previously

18  asserted allegations that (i) the CRAs represented through their published ratings

19  that Fannie Mae and Freddie Mac securities would be "safe" and had an "extremely

20  low" likelihood of default (¶30), and (ii) that the CRAs "knew" their ratings on

21  those securities were "false." *See* ¶31. What Plaintiffs fail to acknowledge is that

22  these very same allegations were contained, *word-for-word*, in their First Amended

23  Complaint, which was dismissed by the Court on August, 4, 2010. *Compare* SAC

24  ¶30 with FAC ¶29; and SAC ¶31 with FAC ¶¶18, 30. Obviously, Plaintiffs cannot

25  revive their claims by realleging the very allegations made in their dismissed FAC.

26    It is telling that Plaintiffs have failed to make any new arguments to address

27  the various bases for dismissal advanced by the CRAs, *i.e.,* that there was no duty

28  of care between Plaintiffs and the CRAs; that the remaining elements of negligent

Defendants' Joint Reply Memorandum in
                                                                        Support of Motion to Dismiss The SAC

1    misrepresentation and fraud are not alleged; and that their claims are barred by the

2    Credit Rating Agency Reform Act of 2006 ("CRARA") as well as the First

3    Amendment to the U.S. Constitution.  Indeed, aside from the discussion of two

4    cases (distinguished below), Plaintiffs' brief repeats verbatim, with the exception of

5    several cosmetic changes, the precise arguments they previously put forth in

6    support of their dismissed FAC.  *Compare* Plaintiffs' Opposition ("Pl's Opp.")

7    Section A-C, E, and G-J *with* Memorandum of Points and Authorities In Support of

8    Plaintiffs' Opposition to the Rating Agencies, Joint Motion to Dismiss the First

9    Amended Complaint Pursuant to Fed. R. Civ. P. Rules 12(b)(6) and 9(b) A-D and

10   F-I.  Plaintiffs' decision to rehash without substantive change the arguments

11   previously made flies in the face of the Court's express admonition that Plaintiffs

12   "may wish to consider some of the CRAs' other arguments" should they choose to

13   amend.  *See also Paul Rice et al.* v. *Charles Schwab et al.*, No. 10-00398-CJC, slip

14   op. at 2 (C.D. Cal. Aug. 4, 2010) ("August 4 Order") (Docket No. 34).

15           For the reasons set forth below, Plaintiffs' SAC must be dismissed with

16   prejudice.

## II.    ARGUMENT

### A.    THE CRAS DID NOT OWE PLAINTIFFS A DUTY OF CARE UNDER EITHER NEW YORK OR CALIFORNIA LAW

As set forth in the CRAs' opening brief, the relationship required to allege a

duty of care under New York law is one of privity or its functional equivalent.[1]

---

[1]    Plaintiffs incorrectly assert that *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938) mandates application of California law to their negligent misrepresentation claim merely because this action was removed from a California State Court.  Pl's Opp. at 5.  The law is clear, however, that while a federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law, it certainly need not apply the forum state's substantive law.  *Precision Safety Innovations, Inc.* v. *Branson Ultrasonic Corp.*, 2005 WL 5801513, *4 (C.D. Cal. 2005).  As demonstrated in the CRAs' opening brief, (The Rating Agencies' Joint Memorandum of Points and Authorities In Support of Their Motion to Dismiss the Second Amended Complaint (the "Opening Brief") at 5 n.3), California's choice of law rules mandate the application of New York law here, although as demonstrated below, Plaintiffs' negligent misrepresentation claim fails under the law of either state.

1   *See, e.g., Ultramares Corp.* v. *Touche*, 255 N.Y. 170, 182-83, 174 N.E. 441, 446

2   (1931).  Under California law, a plaintiff must allege that it was a member of a

3   "limited group of intended beneficiaries" of the defendant's representation in order

4   to demonstrate the existence of a duty of care.  *Bily* v. *Arthur Young & Co.*, 3 Cal.

5   4th 370 (1992).  Plaintiffs, effectively conceding that they cannot meet the standard

6   under New York law, do not even address it.  Nor can they even come close to

7   satisfying the California test, which follows Restatement (Second) of Torts, Section

8   552.  Plaintiffs do not (and cannot) point to any facts in the SAC that even begin to

9   suggest they were members of a "narrow and circumscribed class of persons to

10  whom or for whom the misrepresentations were made," *Bily*, 3 Cal. 4th at 408, and

11  do not once allege any contact with the CRAs.  As noted, they argue instead that a

12  duty of care existed in this case because they were "part of the class (investors) that

13  rely on the Defendants' ratings to make investment decisions."  *See* Pl's Opp. at 6.

14      But there is nothing at all "narrow and circumscribed" about a "class of

15  investors" that may have consulted the CRAs' broadly published opinions.  This

16  "class" would have no reasonable or principled boundaries and would include many

17  millions of potential investors around the world, not to mention other potential

18  users of credit ratings such as entities that did business with, or extended credit to,

19  Fannie Mae and Freddie Mac.  Moreover, there are no facts alleged in the SAC to

20  demonstrate — as required under both California and New York law — that either

21  of the CRAs specifically intended to provide their ratings of Fannie Mae and

22  Freddie Mac to these specific Plaintiffs.  *See, e.g., Bily*, 3 Cal. 4th at 394-95

23  (observing that Section 552 was intended to "'eliminate the liability to the very

24  large class of persons whom almost any negligently given information may

25  foreseeably reach and influence, and limit the liability, not to a particular plaintiff

26  defined in advance, but to the comparatively small group whom the defendant

27  expects and intends to influence'") (quoting Restatement (Second) of Torts, Draft

28

1  No. 11 § 552 at 56 (Apr. 15, 1965)).[2] *See also In re Enron Corp. Securities,*

2  *Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 826 (S.D. Tex 2005)

3  (citing Comment (h) to Section 552 and noting that 552 "subjects the negligent

4  supplier of misinformation to liability only to those persons for whose benefit and

5  guidance it is supplied. . . . It is not enough that the maker knows of the ever-

6  present possibility of repetition to anyone, and the possibility of action in reliance

7  upon it, on the part of anyone to whom it may be repeated."); *id.* at 827

8  ("[A]llowing anyone to sue credit rating agencies who had read the credit rating

9  reports and claimed to have relied upon them and lost money in any endeavor that

10  person undertook would be far more deleterious than beneficial to society as a

11  whole.").  Instead, Plaintiffs offer only the unsupported, conclusory allegation that

12  "Defendants specifically intended that the Plaintiffs would rely on their credit

13  ratings." Pl's Opp., at 7 (citing the SAC at ¶ 23).  This allegation has already been

14  tried and failed.  *Compare* SAC ¶ 23 *with* FAC ¶ 23.

15      This result is also grounded in well-settled public policy.  If plaintiffs could

16  state a claim based on the sort of allegations at issue here, it would have an

17  overwhelming chilling effect on the willingness of any party (not just the CRAs) to

18  publish statements of opinion to the market as a whole.  *Ultramares Corp.* v.

19  *Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931) (noting the unacceptable prospect

20  of "liability in an indeterminate amount for an indeterminate time to an

21  indeterminate class").  In *Gutter* v. *Dow Jones, Inc.*, 22 Ohio St. 3d 286, 490

22  N.E.2d 898 (Ohio 1986), for example, the court dismissed a negligent

23  misrepresentation claim brought against a newspaper by an investor.  The plaintiff

24  _____

25  [2]   In the section of their brief regarding duty of care, Plaintiffs curiously cite
two cases, *Cohen* v. *S&S Construction Co.*, 151 Cal. App. 3d 941 (4th Dist.
1983) and *Gagne* v. *Bertran*, 43 Cal. 2d 481 (1954), which have no bearing

26  on — and do not even address — the issue of duty.  These cases (addressed
more fully below) stand for the proposition that in certain instances, with

27  facts totally distinguishable from those in this case, statements of opinion can
constitute actionable statements of fact.

28

1    claimed to have relied to his detriment on a report in the newspaper that certain

2    corporate bonds were "trading with interest."  He alleged that the defendant

3    publisher "knew, or should have known" the report was inaccurate and that it

4    published the report "with the intent that investors rely" on it in making financial

5    decisions.  *Id.* at 287.  Dismissing the claim, the court concluded that "as a

6    newspaper reader, appellee does not fall within a special limited class (or group) of

7    foreseeable persons as set forth in Section (2)(a) [of Section 552]."  *Id.  See also*

8    *Ginsburg* v. *Agora, Inc.*, 915 F. Supp. 733, 739 (D. Md. 1995) (dismissing

9    negligent misrepresentation claim on the grounds that "[t]he publication is offered

10   to the general public and the information provided in the publication is of a general

11   nature, that is, it is not specifically tailored to [the] financial situation of any

12   individual subscriber"); *Stancik* v. *CNBC*, 420 F. Supp. 2d 800, 807-08 (N.D. Ohio

13   2006) (granting motion to dismiss action brought by viewer against financial cable

14   television network, noting that "[a] contrary result would in effect extend liability to

15   all the world and not a limited class").  As demonstrated in the CRAs' Opening

16   Brief the SAC establishes that the ratings, much like the alleged misrepresentations

17   at issue in the cases cited to above, were widely "published . . . to the market at

18   large"  Opening Brief at 7.  *See also, e.g.,* SAC at ¶¶ 17-19 (acknowledging the

19   widespread dissemination of the ratings assigned to Fannie Mae and Freddie Mac

20   because Moody's and Standard and Poor's "published the ratings").

21        The same public policy principles are applicable here.  Accordingly,

22   Plaintiffs can establish no duty owed by the CRAs.

23   **B.    PLAINTIFFS FAIL TO ALLEGE ANY OF THE OTHER ELEMENTS**
         **REQUIRED TO STATE A CLAIM FOR NEGLIGENT**
24       **MISREPRESENTATION OR FRAUD**

25        Plaintiffs cannot, in any event, establish the other elements required to state a

26   claim for negligent misrepresentation or fraud including, most glaringly, the

27   existence of any misstatement of fact.  As noted, Plaintiffs offer no basis upon

28   which to distinguish, and thereby tacitly acknowledge the applicability of, the

1   unbroken line of recent cases holding that credit ratings are statements of opinion

2   that cannot constitute actionable misstatements unless made by a speaker who

3   actually disbelieves those opinions.  Specifically, the court in *In re Lehman Bros.*

4   *Securities & ERISA Litigation*, 684 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2010)

5   recognized that a credit rating is not a fact, but rather "a statement of opinion by

6   each ratings agency," and is therefore not actionable absent factual allegations

7   sufficient to support a finding that the "ratings agencies did not truly hold those

8   opinions at the time they were made public."  This holding has been echoed in

9   numerous other recent decisions:

10      • "Credit ratings . . . are statements of opinion, as they are predictions of

11         future value and future protection of that value."  *New Jersey*

12         *Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC*,

13         2010 WL 1172694, at *14 (S.D.N.Y. Mar. 26, 2010).

14      • "[C]redit ratings and the adequacy of credit enhancements are clearly

15         opinion statements because they predict future value and reliability . . .

16         and are not actionable unless it is alleged that the opinions were not

17         truly held." *New Jersey Carpenters Health Fund* v. *Residential*

18         *Capital, LLC*, 2010 WL 1257528, at *6 (S.D.N.Y. Mar. 31, 2010).

19      • "Ratings are opinions."  *In re IndyMac Mortgage-Backed Securities*

20         *Litigation*, 2010 WL 247 3243, at *11 (S.D.N.Y. Jun. 21, 2010).

21      • "[W]hether the 'credit quality of the mortgage pool' was 'properly

22         considered' or 'adequate' to support a particular rating was not a

23         matter of objective fact." *Tsereteli* v. *Residential Asset Securitization*

24         *Trust 2006-A8*, 692 F. Supp. 2d 387, 394-95 (S.D.N.Y. 2010).

25      • "[T]hese are statements of opinion, not facts."  *New Jersey Carpenters*

26         *Health Fund* v. *DLJ Mortgage Capital, Inc.*, 2010 WL 1473288, at *8

27         (S.D.N.Y. Mar. 29, 2010).

28

---

1    Nor do Plaintiffs make any effort to deal with other cases, such as the Sixth
2    Circuit's decision in *Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499
3    F.3d 520, 529 (6th Cir. 2007), holding that a credit rating "is a predictive opinion,
4    dependent on a subjective and discretionary weighing of complex factors" and
5    "communicates [no] provably false connotation."
6         The decisions in *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651
7    F. Supp. 2d 155 (S.D.N.Y. 2009), and *King County, Washington* v. *IKB Deutsche*
8    *Indus, AG,* 2010 WL 1702196 (S.D.N.Y. Apr. 26, 2010), *see* Pls' Opp. 9-10, which
9    involved vastly different allegations than those made here, are therefore entirely
10   inapposite.  In *Abu Dhabi*, for example, the court found that plaintiffs had set forth
11   in "painstaking[] detail" factual allegations about the structure, operations, and
12   portfolio of the specific Structured Investment Vehicle (SIV) at issue and
13   defendants' alleged ongoing responsibilities with respect to that SIV.  *Abu Dhabi*,
14   651 F. Supp. 2d at 164-68, 178.  Indeed, the *Abu Dhabi* court relied on the
15   cumulative effect of, *inter alia*, allegations that: (i) the CRAs allegedly knew of
16   departures from the specific "program guidelines" applicable to the SIV, *see id.*
17   ("[D]efendants knew that although the actual portfolio consisted of 'much more'
18   than fifty-five percent of RMBS, the Information Memoranda stated that the
19   Cheyne SIV's portfolio would consist of no more than fifty-five percent of such
20   securities."); (ii) the "Rating Agencies were in possession of non-public
21   information that would have contradicted the assignment of high ratings to the
22   Rated Notes"; and (iii) "the Rating Agencies were compensated . . . at a fee
23   substantially higher than normally received and a fee that was directly connected to
24   the success" of the SIV.  *Id.*, at 178.[3]  While the CRAs maintain that the allegations

25
26   [3]   In *King County, Washington* v. *IKB Deutsche Industriebank AG et al.*, 2010
     WL 1702196 (S.D.N.Y. Apr. 26, 2010), a case brought by one of the same
27   plaintiffs as in *Abu Dhabi* and involving the same kinds of detailed factual
     allegations about a second SIV, the court simply cross-referenced its decision
     in *Abu Dhabi* and reached the same conclusions. *Id.*
28

1   in *Abu Dhabi* and *King County* will ultimately be proved to be without merit, those

2   allegations are not at all comparable to the vague and unsupported allegations that

3   Plaintiffs assert here.   In striking contrast to the complaints in *Abu Dhabi* and *King*

4   *County*, Plaintiffs' SAC does not cite to a single specific fact about the CRAs'

5   rating process for the Fannie Mae and Freddie Mac ratings at issue, but instead

6   relies on vague and conclusory allegations that the ratings were based on "stale

7   information," that the CRAs "knew" the ratings were "false" and that their

8   "models" were "unreasonable."  Pl's Opp., at 12.

9          In fact, allegations nearly identical to those made here were recently found to

10  be insufficient as a matter of law by the court in *Freidus* v. *ING Groep N.V.*, 2010

11  WL 3554097 (S.D.N.Y Sep. 14, 2010).  The plaintiff in *Freidus* alleged that the

12  ratings at issue were false and misleading because they were based on "out-of-date"

13  models, assumptions and data.  *See Freidus*, 2010 WL 3554097, at *12 ("The CAC

14  alleges that these statements 'did not accurately reflect the risk of default' and

15  therefore were false and misleading because (i) the ratings were determined by out-

16  of-date models based on out-of-date assumptions that used inaccurate data, and (ii)

17  the ratings agencies relaxed their ratings criteria to get more business and were

18  subject to conflicts of interest.").  Analyzing these allegations under the more

19  relaxed pleading standard of Rule 8(a), *see Freidus*, 2010 WL 3554097, at *5, and

20  explicitly relying upon the court's prior decision in *In re Lehman Bros.*, the court

21  found the complaint did not allege that the ratings were false or misleading.  *Id.*

22  Specifically, the court reiterated that credit ratings are opinions and that:

23
24                    Any given rating reflects the judgment of the particular
                      rating agency that certain facts, when fed into a particular
                      model based on a particular set of assumptions, support
25                    issuing a particular rating for a particular security.  That
                      opinion can be false or misleading only if the opinion-
26                    giver – here the rating agency – did not truly believe it to
                      be the case at the time it was issued.

27  *Id.*  Thus, mere allegations that the models, data or assumptions used to rate a

28  specific transaction are unreasonable, out-of-date or pure speculation do not rise to

---

1  the level of specificity required.

2      Plaintiffs' failure even to discuss these recent decisions makes it clear that

3  they simply have no way of rebutting the CRAs' argument on this fundamental and

4  dispositive issue.  Rather than addressing directly applicable law, Plaintiffs instead

5  rely on older, inapposite, state court cases, including *Cohen* and *Gagne*, *supra* note

6  2, which do not involve rating agencies, or the sort of opinions about the future

7  upon which they have chosen to sue.  In *Cohen*, for example, the court held that

8  plaintiffs could pursue a fraud claim against a real estate developer who allegedly

9  misrepresented that a certain development had "panoramic views" while allegedly

10  possessing facts establishing that it did not.  *Cohen* v. *S&S Construction Co.*, 151

11  Cal. App. 3d 941, 946 (4th Dist. 1983) (citation omitted).  This statement about the

12  present condition of a piece of property is in no way comparable to an opinion

13  about the future creditworthiness of debt issuers and securities.  Plaintiffs' citation

14  to *Gagne* v. *Bertran*, 43 Cal. 2d 481 (1954) is equally unavailing since that case

15  involved undisputed statements of fact, not statements of opinion.  The defendant in

16  that case, unlike the CRAs here, was specifically retained by the plaintiff and did

17  not offer an opinion at all.  Rather, upon completion of his services — which

18  involved taking soil samples at a prospective construction site — he sent plaintiff a

19  letter containing certain verifiable facts which, according to the court, could

20  constitute actionable misrepresentations.  *Id.* at 485 ("[D]efendant represented and

21  warranted to plaintiffs that there was no [soil] fill beyond 16 inches").  These

22  decisions, involving representations wholly unlike the rating opinions at issue,

23  would be unpersuasive even if there were not numerous contrary authorities dealing

24  specifically with ratings and the very issue before this Court.  They certainly

25  provide Plaintiffs with no basis for ignoring – or refuting – these authorities.

26      Plaintiffs' only other case on this point is *In re Wells Fargo Mortgage-*

27  *Backed Certificates Litigation*, 2010 WL 1661534 (N.D. Cal. 2010) ("*Wells Fargo*

28  *I*"), in which the court dismissed claims against rating agencies (including the two

1  CRAs in this case), holding that the rating agencies were not "underwriters" or

2  "controlling persons" for purposes of Sections 11 and 15 of the Securities Act of

3  1933 with respect to certain mortgage-backed certificates.  The court initially

4  allowed claims to proceed against the non-rating agency defendants, finding that

5  the complaint included allegations "sufficient to establish an actionable

6  misstatement with respect to the *rating process*."  *Id.* at *12. (emphasis added).

7  However, the *Wells Fargo* court just this week revisited the issue and brought its

8  ruling into line with the overwhelming majority of recent decisions discussed at 6,

9  8, *supra*.  *See In re Wells Fargo Mortgage Backed Certificates Litigation*, No. 09-

10  CV-01376-LHK, slip op. at 6-7 (N.D. Cal. Oct. 5, 2010) ("*Wells Fargo II*").

11  Specifically, the court found that credit ratings are opinions and noted that "a

12  number of other courts have reached the same conclusion." *Id.*  The court further

13  held that contrary to the *Wells Fargo* plaintiffs' assertion, ratings, as opinions, are

14  subject to the "knowing falsity" standard set by *Rubke* v. *Capitol Bancorp LTD*,

15  551 F.3d 1156 (9th Cir. 2009) and *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S.

16  1083 (1991).  *Wells Fargo II*, slip op. at 6-7 ("[T]he *Virginia Bankshares* and

17  *Rubke* decisions post-date *Apple Computer*, and set a more stringent standard for

18  statements of opinion.  . . . The Court concludes that the appraisals, ratings and

19  LTV ratios are statements of opinion, and as such, are subject to the *Virginia*

20  *Bankshares/Rubke* pleading standard.").  Accordingly, plaintiffs seeking to hold a

21  party liable for allegedly "false" opinions may *not* rely upon the tests set forth in *In*

22  *re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113-14 (9th Cir. 1989), which are

23  satisfied by allegations that the speaker had "no reasonable basis" for the opinion or

24  "is aware of undisclosed facts tending to seriously undermine the accuracy of the

25  statement."  Thus, *Wells Fargo I*, upon which Plaintiffs heavily rely, has been

26  superseded by *Wells Fargo II*, which — like all of the other decisions addressing

27  this issue — compels dismissal of the SAC.

28      Plaintiffs' inability to state a claim is further highlighted by their failure even

1    to address, much less satisfy, Federal Rule of Civil Procedure 9(b), which requires

2    both of their claims (negligent misrepresentation and fraud) to be pled with

3    particularity.  This means that Plaintiffs must allege not only "the time, place and

4    content" of any alleged misrepresentations, but also the "circumstances indicating

5    falseness."  As demonstrated in the CRAs' Opening Brief, the most Plaintiffs can

6    allege here are broad, conclusory assertions that, for example, the CRAs "had

7    knowledge that [Fannie Mae and Freddie Mac] were in financial trouble and were

8    bad risks" (SAC ¶18), and that "defendants knew the ratings were false because the

9    models, data and assumptions used to rate Fannie Mae and Freddie Mac were

10   unreasonable, false, and based on pure speculation."  Pl's Opp. at 10.  In addition to

11   their other dispositive failings, Plaintiffs' claims are insufficient as a matter of law

12   because there are no facts alleged to support these sweeping and conclusory

13   assertions, *i.e.*, there is no effort to allege *why* or *how* the CRAs' models, data and

14   assumptions were "unreasonable" or "false" or "speculative," and no discussion at

15   all about the "circumstances" surrounding these alleged misstatements.

16        Indeed, Plaintiffs all but admit that they have no actual facts to support these

17   allegations by making their assertions "upon information and belief" — a fact that

18   by itself requires dismissal given the lack of any supporting factual basis.  *See*

19   *Clemens* v. *DaimlerChrysler Corp.*, 2006 WL 6022681, at *1 (C.D. Cal. 2006)

20   ("Fraud allegations based on 'information and belief' do not satisfy the particularity

21   requirements of Rule 9(b), unless the complaint sets forth the facts on which the

22   belief is founded.") (citing *Comwest, Inc.* v. *American Operator Services, Inc.*, 765

23   F. Supp. 1467, 1471 (C.D. Cal. 1991)).  Ultimately, Plaintiffs' allegations amount

24   simply to an expression of their view that, looking back, the ratings on securities

25   they purchased should have been lower. Such allegations fall far short of stating a

26   claim for either negligent misrepresentation or fraud.[4]

27   ───────────────

[4]      Plaintiffs also do nothing to cure the SAC's dispositive failure under Rule
28   9(b) to distinguish among multiple defendants instead of grouping allegations

## C.   THE CREDIT RATING AGENCY REFORM ACT OF 2006 PREEMPTS PLAINTIFFS' NEGLIGENCE-BASED CLAIMS

Plaintiffs also continue to offer no meaningful response on the issue of preemption.  They again do not even address the decisions — including U.S. Supreme Court decisions — cited in the CRAs' Opening Brief, which demonstrate that the CRARA preempts state negligent misrepresentation claims.  Instead, Plaintiffs rely exclusively on *In re National Century Financial Enterprises, Inc., Investment Litigation*, 580 F. Supp. 2d 630 (S.D. Ohio 2008) ("*NCFE*").  In *NCFE*, however, the court, noting that the issue had received "little briefing" in that case, expressly stated that it was "refrain[ing] from deciding the issue until it has the benefit of full briefing from the parties."  580 F. Supp. 2d at 651-52.  Moreover, the *NCFE* court recognized that the CRARA prohibits states from "tell[ing] [CRAs] what ratings they should give or dictat[ing] how they arrive at their ratings." *NCFE*, 580 F. Supp. 2d at 651.  Yet that is precisely what common-law actions seeking damages do and have repeatedly been held to do.  *See* Opening Brief at 16-20.

As demonstrated in the CRAs' Opening Brief, a recent law review article on the preemptive effect of the CRARA concludes that "[b]oth Supreme Court jurisprudence and the ordinary meaning of 'regulate' point toward construing that word to include private causes of action in the context of a preemption clause." Timothy M. Sullivan, Note, *Federal Preemption and The Rating Agencies: Eliminating State Law Liability to Promote Quality Ratings*, 94 Minn. L. Rev.

---

against "Defendants" as a group.  *See, e.g.,* SAC, at ¶¶ 30-31.  As noted in the CRAs' Opening Brief, this alone is grounds for dismissal. *See Swartz* v. *KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'  In the context of a fraud suit involving multiple defendants, a plaintiff must, *at a minimum,* 'identif[y] the role of [each] defendant [ ] in the alleged fraudulent scheme.'") (emphasis added and citations omitted).

---

1   2136, 2153 (June 2010).  The article states, after detailed analysis of the CRARA

2   language and relevant cases, that it was likely that "Congress intended to preempt

3   all claims against rating agencies registered as NRSROs except enforcement actions

4   brought by regulatory agencies on theories of rating agency fraud or deceit."  *Id.* at

5   2156.  Such preemption, the article explains, reflects the Congressional goal of

6   improving ratings quality in part by promoting uniformity across jurisdictions.

7        Careful examination of the legislative purpose behind the CRARA fully

8   supports application of its preemptive effect on this case.  In adopting the CRARA,

9   Congress determined *not* that NRSROs should be free from regulation, but that the

10  SEC was the appropriate body to do the regulating.  *See* H.R. Rep. No. 109-546, at

11  14 (2006) ("NRSROs will be held accountable under the securities laws: The SEC

12  will be able to inspect, examine, and bring enforcement actions against rating

13  agencies under the 1934 Act.").  Congress also expressed, in the clearest language,

14  its intent to preserve the credit ratings agencies' independence in reaching rating

15  opinions and to protect their underlying procedures and methodologies.  *See* H.R.

16  Rep. No. 109-546, at 14 (2006) ("Congress and the SEC must be cautious not to

17  intrude into the ratings procedures and methodologies. H.R. 2990 does not intrude

18  into these procedures and the Manager's Amendment expressly affirms that the

19  SEC may not intrude into the ratings procedures and methodologies.").[5]

20

21

---

22  [5]  Plaintiffs also incorrectly portray the CRAs' argument with respect to
    CRARA preemption.  Contrary to Plaintiffs' assertion, the CRAs do not
23  anywhere assert blanket immunity "from any state activity that could impose
    ratings-related liability." Pl's Opp., at 15.  Rather, the CRAs acknowledge
24  that Congress struck a balance by which it precluded private rights of action
    arising from ratings-related activity – the CRARA does not foreclose the
25  possibility of governmental enforcement actions arising from alleged fraud or
    deceit on the part of the CRAs. See Opening Brief, at 18 (citing 15 U.S.C. §
26  78o-7(o)(2) which provides that "[n]othing in this subsection prohibits the
    securities commission . . . of any State from investigating and bringing an
27  enforcement action with respect to fraud or deceit against any nationally
    recognized statistical organization.").

28

**D.   PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ARE ALSO BARRED
BY FUNDAMENTAL CONSTITUTIONAL PRINCIPLES**

As previously established, (*see* Opening Brief, at 20-25), Plaintiffs' non-fraud claims are also barred by fundamental principles of constitutional law.  This is true both because the publicly-disseminated credit ratings that Plaintiffs seek to attack are non-actionable expressions of opinion and because Plaintiffs fail to allege that the CRAs acted with actual malice.

Plaintiffs respond by again citing to only one decision, *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009), which actually serves to reinforce the CRAs' First Amendment protections in this case.  The court in *Abu Dhabi* recognized unequivocally that "[i]t is well-established that under typical circumstances, the First Amendment protects rating agencies, subject to an 'actual malice' exception, from liability arising out of their issuance of ratings and reports because their ratings are matters of public concern." *Id.* at 175.  The decision is in accord with the extensive body of case law that has repeatedly and consistently recognized that, at its core, the CRAs' speech – opinions about securities that are disseminated to the investing public – implicate the First Amendment and are entitled to its protections.  *See, e.g., Compuware*, 499 F.3d at 529; *Jefferson County School District No. R-1* v. *Moody's Investor's Services, Inc.*, 175 F.3d 848, 856 (10th Cir. 1999); *County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151, 157 (C.D. Cal. 1999); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 808-27 (S.D. Tex. 2005).

While acknowledging that the First Amendment applies in "typical circumstances," the court in *Abu Dhabi* found that at the motion to dismiss stage it was bound to accept the affirmative and specific allegations made by the plaintiff in that case that the ratings on a particular and identified issuer "were never widely disseminated, but were provided instead in connection with a private placement to a select group of investors."  651 F. Supp. 2d at 176.  As such, the court held that

1   dismissal on First Amendment grounds was not appropriate at that procedural stage.

2   No such circumstances are, or could be, alleged here.  Indeed, Plaintiffs here

3   explicitly acknowledge that the CRAs' ratings on Fannie Mae and Freddie Mac

4   were "published," (SAC at ¶ 18), and "made by the Defendants to the *group of*

5   *investors* that included the Plaintiffs."  (Pl's Opp. at 18).  This fact is further

6   evidenced by the ratings reports themselves.  *See* September 13, 2010 Declaration

7   of David T. Biderman in Support of Joint Motion to Dismiss, Exs. A and B; *see*

8   *also* September 13, 2010 Declaration of Joshua M. Rubins, exs. 1 and 2.[6]  There can

9   be no serious dispute, therefore, that the ratings in this case – ratings which are of

10  the highest public concern because they relate to Government-Sponsored

11  Enterprises that receive support from the Federal government and assume public

12  responsibilities – fall within the "typical circumstances" consistently recognized by

13  the courts.  *See, e.g.,* http://www.fanniemae.com/kb/index?page=home&c=aboutus

14  (defining Fannie Mae as a Government-Sponsored Enterprise).

15      Plaintiffs also argue that the CRAs' credit ratings lack First Amendment

16  protection because they relate to "economic activity."  Pl's Opp. at 17-18.  This

17  argument is flatly wrong as a matter of law and lacks any support whatsoever in

18  decades of relevant First Amendment precedent.  *See New York Times* v. *Sullivan,*

19

20  [6] Plaintiffs argue that the Court may not consider these declarations.  The Ninth Circuit has clearly held, however, that a "court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment," (*Lee* v. *City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)), and that a defendant may place before the court such documentation even if "the document are not physically attached to the complaint" so long as the plaintiff does not challenge the "authenticity" of the document and the "complaint necessarily relies" on them.  *Id.* (citation omitted).  "Second, under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'"  *Id.*  Here, the CRA Declarations and attached documentation were offered merely for the limited purpose of establishing the existence of the judicially noticeable fact that each CRA is headquartered in New York.  Opening Brief, at 19 n.10.  Moreover, the publications attached to the CRA Declarations were referenced in the SAC when Plaintiff alleged that the CRAs published their ratings on Fannie Mae and Freddie Mac.  SAC at 17 (stating that Moody's and S&P published the ratings allegedly assigned by each CRA to the Fannie Mae and Freddie Mac securities).

1   376 U.S. 254, 266, 84 S. Ct. 710, 718, 11 L.Ed.2d 686 (1964) ("The publication

2   here was not a 'commercial advertisement' . . . . It communicated information,

3   expressed opinion . . . . That the Times was paid for publishing the advertisement is

4   as immaterial in this connection as is the fact that newspapers and books are sold.");

5   *Burstyn* v. *Joseph Wilson, Inc.*, 343 U.S. 495, 501-02, 72 S. Ct. 777, 780, 96 L.Ed.

6   1098 (1952) ("It is urged that motion pictures do not fall within the First

7   Amendment's aegis because their production, distribution, and exhibition is a large-

8   scale business conducted for private profit.  We cannot agree.  That books,

9   newspapers, and magazines are published and sold for profit does not prevent them

10  from being a form of expression whose liberty is safeguarded by the First

11  Amendment.  We fail to see why operation for profit should have any different

12  effect in the case of motion pictures.").  A particularly apposite case is *Lowe* v.

13  *SEC*, 472 U.S. 181, 210 n.58, 105 S. Ct. 2557, 2573 n.58, 86 L.Ed.2d 130 (1985),

14  in which the Supreme Court observed that "because we have squarely held that the

15  expression of opinion about a commercial product such as a loudspeaker is

16  protected by the First Amendment, . . . it is difficult to see why the expression of an

17  opinion about a marketable security should not also be protected."  *Id.* (citation

18  omitted).[7]

19

20  [7]   Plaintiffs invocation of California's anti-SLAPP statutes is equally
    unpersuasive in the context of the protections afforded the CRAs' opinions
21  by the First Amendment.  The anti-SLAPP statute reflects California's efforts
    to provide some forms of expression heightened protection against lawsuits
22  that may seek "to chill the valid exercise of the constitutional rights of
    freedom of speech."  Cal. Civ. Proc. Code § 425.16(a).  This special motion
    to strike is not available to a defendant when an action is "brought against a
23  person primarily engaged in the business of selling or leasing goods or
    services, including, but not limited to, insurance, securities, or financial
24  instruments, arising from any statement or conduct by that person" when the
    statements are "representations of fact" designed to promote or sell the
25  product to a potential purchaser.  Cal. Civ. Proc. Code § 425.17.  The CRAs'
    opinions do not fit within the anti-SLAPP exception – they are opinions, not
26  representations of fact.  Nor do they deal with the defendants themselves or
    any competitor of the defendants, a prerequisite to application of the
27  exception.  *See Simpson Strong-Tie Co., Inc.* v. *Gore*, 49 Cal.4th 12, 30
    (2010) (holding that the anti-SLAPP exception applies only to
28  "representations of fact about [the defendant's] or a business competitor's

1    Plaintiffs alternatively argue that they have alleged actual malice here by

2  pointing to their formulaic and rote recitation of the standard set forth in the SAC as

3  grounds for California Civil Code § 3294 "entitling Plaintiffs to punitive damages

4  in an amount appropriate to punish or set an example of Defendants." (SAC at ¶

5  44; Pl's Opp. at 18-19). As established in the CRAs' Opening Brief, these sort of

6  conclusory allegations are wholly insufficient to support a finding of actual malice

7  in connection with the Fannie Mae and Freddie Mac ratings. *See Enron*, 511 F.

8  Supp. 2d at 825 (finding insufficient to establish actual malice the "conclusory

9  allegations regarding the CRAs" because such allegations do not "satisfy any of the

10  specific, enhanced pleading requirements established by courts to overcome First

11  Amendment protection"). *See also Barger* v. *Playboy Enterprises, Inc.*, 564 F.

12  Supp. 1151, 1156 (N.D. Cal. 1983) (conclusory allegation that defendant acted

13  "recklessly" was insufficient to constitute an allegation of actual malice); *Shamley*

14  v. *ITT Corp.*, 869 F.2d 167, 173 (2d Cir. 1989) (allegations of malice "must be

15  supported by sufficient evidentiary facts").

16  **E.   LEAVE TO AMEND THE FIRST AMENDED COMPLAINT SHOULD
        BE DENIED BECAUSE SUCH LEAVE WOULD BE FUTILE**

17

18    Plaintiffs have already had three opportunities to set forth facts that support

viable causes of action. Having considered and chosen not to address any of the
19
numerous deficiencies identified on multiple occasions by both the Court and the
20
CRAs, Plaintiffs should not now be granted yet another chance to attempt to state a
21
claim. Any such attempt would be futile for the reasons set forth more fully at 2-
22
17, *supra*.
23

24

25    business operations, goods, or services"). In any event, that section does not
      purport to (and could not) delineate the line between protected and
26    unprotected speech under the First Amendment. California was not
      constitutionally obliged to enact the anti-SLAPP statute at all and its decision
27    about what speech to protect under a procedural statute does not and could
      not affect the determination of what the First Amendment does protect.
28

# III.   CONCLUSION

For the foregoing reasons, the CRAs respectfully request that the Court grant their motion to dismiss with prejudice the claims asserted against them in the SAC.

DATED:  October 8, 2010

/s/David T. Biderman
Floyd Abrams (admitted *pro hac vice*)
Brian T. Markley (admitted *pro hac vice*)
**CAHILL GORDON & REINDEL LLP**
80 Pine Street
New York, New York  10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

David T. Biderman (SBN 101577)
Judith B. Gitterman (SBN 115661)
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA  900671
Telephone: (310) 788-9900
Facsimile: (310) 788-3399

*Attorneys for Standard & Poor's Financial Services, LLC*

/s/Scott D. Cunningham (as authorized on October 8, 2010)
James J. Coster (admitted *pro hac vice*)
James Regan (admitted *pro hac vice*)
Joshua M. Rubins (admitted *pro hac vice*)
**SATTERLEE STEPHENS BURKE & BURKE LLP**
230 Park Avenue, 11th Floor
New York, New York  10169
Telephone: (212) 818-9200
Facsimile:  (212) 818-9606

Frank A. Silane (SBN 90940)
Scott D. Cunningham (SBN 200413)
**CONDON & FORSYTH LLP**
1901 Avenue of the Stars, suite 850
Los Angeles, CA  90067-6010
Telephone: (310) 557-2030
Facsimile: (310) 557-1299

*Attorneys for Defendant Moody's Investors Service, Inc.*

**PROOF OF SERVICE BY MAIL**

I am a citizen of the United States and employed in Los Angeles, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1888 Century Park East, Suite 1700, Los Angeles, California 90067-1721. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On October 8, 2010, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

in a sealed envelope, postage fully paid, addressed as follows:

**Attorney for Plaintiffs**

Jordan Tyler Porter, Esq.
Law Offices of Eric A. Woosley
1602 State Street
Santa Barbara, CA 93101
Tel:  (805) 897-1830
Fax:  (805) 897-1834

Lowell Haky, Esq.
Vice President & Associate General Counsel
Charles Schwab & Co., Inc.
101 Montgomery Street
San Francisco, California 94104

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 8, 2010, at Los Angeles, California.

Helen E. Mays

70164-0009/LEGAL19350708.1          -19-          Defendants' Joint Reply Memorandum in Support of Motion to Dismiss The SAC