JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

PAUL RICE and JOSEPH RICE,

    Plaintiffs,

vs.

CHARLES SCHWAB, MOODY'S INVESTORS SERVICE, STANDARD & POOR'S, and DOES 1–50,

    Defendants.

Case No.: SACV 10-00398-CJC(MLGx)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE**

## INTRODUCTION AND BACKGROUND

Plaintiffs Paul Rice and Joseph Rice, trustees and beneficiaries of the Rice Family Trust, brought suit against Defendants Charles Schwab & Co., Inc. ("Charles Schwab"), Moody's Investors Service, Inc. ("MIS") and Standard & Poor's Financial Services, LLC ("S & P"), alleging negligence, intentional misrepresentation and negligent misrepresentation for credit ratings that were published by MIS and S & P and

investments that were recommended by Charles Schwab. (Pls.' Second Am. Compl. ¶¶ 7–16.) Specifically, Plaintiffs allege that Charles Schwab recommended the purchase of preferred shares of Fannie Mae and Freddie Mac in "Fixed Income Offering Reports" that Plaintiffs received in January, February and May 2008. (Pls.' Second Am. Compl. ¶¶ 7–16.) At those times, MIS and S & P "directly communicated published" strong credit ratings of Fannie Mae and Freddie Mac, (Pls.' Second Am. Compl. ¶ 16), which Plaintiffs relied on in deciding to purchase large numbers of shares in Fannie Mae and Freddie Mac. (Pls.' Second Am. Compl. ¶¶ 7–16, 19.) Plaintiffs allege that Defendants knew that Fannie Mae and Freddie Mac were in financial trouble and were bad risks in 2007 but nevertheless published misleading strong favorable credit ratings. (Pls.' Second Am. Compl. ¶ 18.) In September 2008, Fannie Mae and Freddie Mac were placed into conservatorship and as a result, the preferred shares of Fannie Mae and Freddie Mac that Plaintiffs purchased lost all value. (Pls.' Second Am. Compl. ¶ 21.)

Plaintiffs initially filed this action against Charles Schwab, MIS, and S & P. By order dated June 17, 2010, the Court approved a joint stipulation to submit the dispute between Plaintiffs and Defendant Charles Schwab to FINRA arbitration and ordered the case to continue as if Charles Schwab had not been named. By order dated August 4, 2010, the Court granted Defendants MIS and S & P's (collectively "Defendants") motion to dismiss Plaintiffs' First Amended Complaint with leave to amend. Plaintiffs filed their Second Amended Complaint on August 24, 2010, making only minor changes. Defendants now move to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that Plaintiffs cannot establish certain elements of their negligent or intentional

misrepresentation claims, Defendants' motion to dismiss is GRANTED WITH PREJUDICE.[1]

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Mayo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs alleging fraud or mistake, however, must "state with particularity the circumstances constituting fraud or mistake," FED. R. CIV. P. 9(b), including the "the time, place and specific content of the false representations as well as the parties to the misrepresentations." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (*quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).

**ANALYSIS**

Claims for fraud, including intentional misrepresentation and negligent misrepresentation, must be pled with particularity under Rule 9(b). *See Neilson v. Union*

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* FED. R. CIV. P. 78; LOCAL RULE 7-15. Accordingly, the hearing set for October 25, 2010, at 1:30 p.m. is hereby vacated and off calendar.

*Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal, 2003); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005).[2] "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud' and the pleading of that claim as whole of that claim must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Although Plaintiffs attempt to allege a separate cause of action for negligence in addition to their negligent and intentional misrepresentation claims, they have not alleged any conduct by Defendants apart from the representations of Fannie Mae and Freddie Mac's creditworthiness according to each Defendant's credit rating. (Pls.' Second Am. Compl. ¶¶ 23–27.) Plaintiffs' supposed negligence claim is really a restatement of their negligent misrepresentation claim, so the Court cannot consider it as a separate claim. (*See also* Minute Order, Aug. 4, 2010, Dkt. No. 34.)

To state a claim for intentional misrepresentation, Plaintiffs must allege (1) a misrepresentation (including a false representation, concealment or nondisclosure), (2) Defendants' knowledge of falsity of the representation, (3) Defendants' intent to defraud or induce plaintiff to rely on the representation, (4) Plaintiffs' justifiable reliance on the representation, and (5) resulting damage. 5 WITKIN, SUMM. CAL. LAW TORTS § 772(1) (10th ed. 2005); *see also Conrad v. Bank of America*, 45 Cal.App.4th 133, 155 (1996); *Braddock v. Braddock*, 60 A.D.3d 84, 98 (N.Y. App. Div. 2009). Plaintiffs do not allege

---

[2] Plaintiffs and Defendants disagree as to whether California or New York law governs their dispute but did not fully brief the choice-of-law issue. Federal courts located in California apply California choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941). Without undertaking a substantial choice-of-law analysis, the Court notes that the only substantive difference between New York and California law is the limitation of liability for negligent misrepresentation to certain plaintiffs to whom defendants owe a duty. Plaintiffs have failed to state a claim under either state's law, so the Court need not resolve the choice-of-law issue. *See Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (finding that courts need only reach the question of "governmental interest" if the substantive law of the foreign jurisdiction is materially different from California law).

knowing, false representations by Defendants.  (Pls.' Second Am. Compl. ¶¶ 16–18, 37–39.)  In general, a misrepresentation must be one of "existing fact," not an opinion or a prediction or promise as to future events or benefits, in order to be actionable fraud.  *Cohen v. S & S Constr. Co.*, 151 Cal.App.3d 941, 946 (1983).  Statements of opinion or belief are only actionable in one of several narrow exceptions, such as where a defendant holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge.  *Borba v. Thomas*, 70 Cal.App.3d 144, 152 (1977).  Plaintiffs do allege that Defendants held themselves out as experts with superior knowledge.  (Pls.' Second Am. Compl. ¶ 23.)  However, courts applying the first exception have only found that statements of opinion are actionable if the person giving the opinion had actual knowledge that the opinion was false or no belief in the truth of the statement and made it recklessly, without knowing whether it was true or false.  *See Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 415 (Cal. 1992) (finding that auditors may be liable to third parties for their opinions); *Cohen*, 151 Cal.App.3d at 946 (finding that real estate sales agent may be liable for statements that a certain development would have panoramic views while allegedly possessing facts that the piece of property did not).

Defendants' credit ratings are opinions or predictions of the future creditworthiness or value of companies, *see, e.g., In re Lehman Bros. Sec. and ERISA Litig.*, 684 F. Supp. 2d 485, 494–95 (S.D.N.Y. 2010), and therefore are not actionable unless Plaintiffs can demonstrate that Defendants' representatives who published credit ratings actually knew the credit ratings were false or did not believe that the credit ratings were true at the time that each credit rating was issued.  *See, e.g., In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 489 (S.D.N.Y. 2003) (regarding actionable opinions under Section 10(b) of the Securities Act).  Plaintiffs allege that Defendants knew the credit ratings were false because "the models, data, and assumptions used to rate Fannie Mae and Freddie Mac were unreasonable, false and based on pure speculation" and Defendants knew that Fannie Mae and Freddie Mac were in financial trouble in 2007.  (Pls.' Second Am.

Compl. ¶ 39.) These conclusory allegations are not sufficient to show that Defendants knew their credit ratings were false or did not believe in the truth of their credit ratings at the time they were made, nor do they explain how or why Defendants' credit ratings were false, or "the circumstances indicating falseness," with the particularity required under Rule 9(b). *See In Re GlenFed Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994). Plaintiffs have failed to state a claim for intentional misrepresentation.

The elements of a claim for negligent misrepresentation under New York and California law are similar to those for intentional misrepresentation except that a plaintiff need not allege knowledge of falsity or intent to defraud: "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation." *Bily*, 3 Cal.4th at 407 (internal citations omitted); *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citing New York case law). However, where the alleged misrepresentation is a professional opinion, both New York and California law also limit liability to a narrow and circumscribed group of persons "to whom or for whom the misrepresentations were made." *Bily*, 3 Cal.4th at 408 ("Even though the defendant should have anticipated that the misinformation might reach others, he is not liable to them."). The rationale for limiting liability to a specified group of persons is to protect professionals who provide information from unlimited and uncertain liability. *See id.* at 409; *Ultramares Corp v. Touche*, 255 N.Y. 170, 179–80 (1931).

Under New York law, liability for negligent misrepresentation only exists where there is privity or a privity-like bond between the plaintiff and the defendant. *Ultramares Corp.*, 255 N.Y. at 182. A privity-like relationship requires showing that defendant was aware that the [mis]representations were to be used for a particular purpose, reliance by a known party or parties in furtherance of that purpose, and some conduct by the defendants linking them to the party or parties and demonstrating defendant's

understanding of their reliance.  *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 425 (N.Y. 1989).  Broadly disseminated information does not give rise to a negligent misrepresentation claim because otherwise the professional making the representation would be subject to unlimited and uncertain liability.  *See Jaillet v. Cashman*, 189 N.Y.S. 743, 744 (Sup. Ct. N.Y. Co. 1921), *aff'd* 235 N.Y. 511 (1923) (finding no liability for negligent misrepresentation for incorrect news published on ticker service).  Plaintiffs seem to allege that they obtained Defendants' credit ratings from "Fixed Income Offering Reports" from their broker, Charles Schwab.  (Pls.' Second Am. Compl. ¶ 8.)  Plaintiffs also amended their complaint to add the words "directly communicated" to the allegation that Defendants published credit ratings on which Plaintiffs relied.  (Pls.' Second Am. Compl. ¶ 16.)  However, these two allegations are not nearly sufficient to show a privity-like relationship in order to defeat a motion to dismiss under Rule 12(b)(6).

California courts have adopted the approach set out in the Restatement (Second) of Torts Section 552(2), which limits liability for incorrect or mistaken professional opinions to "the person or … limited group of persons for whose benefit and guidance [the speaker] intends to supply the information" and who rely on the information in a specific transaction or type of transaction that the defendant intended to influence.  *Bily*, 3 Cal.4th at 414.  In effect, this limits the liability of a supplier of information to his clients, to whom he intended to communicate the information.  *Id.* at 410.  Although this category of persons is arguably broader than the privity-like relationship required under New York law, Plaintiffs' allegations do not establish that they are within the "limited group of persons" like clients to whom Defendants "intended to communicate" their credit ratings.  At best, Plaintiffs allege that the information was communicated to their broker, who communicated it to them, (Pls.' Second Am. Compl. ¶¶ 8, 16), which is precisely the type of extended liability the California Supreme Court sought to limit when it adopted the Restatement approach.  *Bily*, 3 Cal.4th at 408.  Plaintiffs have not alleged any facts to

show that Defendants intended to communicate their "published" credit ratings to Plaintiffs in order to influence their stock purchases in a way that distinguishes Plaintiffs from any of the other countless investors who use Defendants' published credit ratings. (Pls.' Second Am. Compl. ¶ 23.) Therefore Plaintiffs fail to state a claim for negligent misrepresentation under either New York or California law.[3]

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED WITH PREJUDICE.

DATED: October 22, 2010

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[3] Because the Court finds that Plaintiffs have failed to allege sufficient facts to establish the elements of their intentional and negligent misrepresentation claims, the Court need not address Defendants' alternative arguments of federal pre-emption and First Amendment protection for credit rating agencies' opinions.